IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE No.0:18-CV-60250-UU

PETER E. SHAPIRO, P.A.,

Plaintiff,

-vs-

WELLS FARGO BANK, N.A.,

Defendant.

---

DEPOSITION OF PETER E. SHAPIRO, P.A.

Wednesday, September 12, 2018
10:10 - 1:45 p.m.

Fox Rothschild LLP
777 South Flagler Drive, Suite 1700
West Palm Beach, Florida

Reported By:
Christina Andrioff, Court Reporter
Notary Public, State of Florida
Boca Raton Office Job #J2728626



EXHIBIT A

APPEARANCES:

On behalf of the Plaintiff:

JEFFREY B. CROCKETT, ESQUIRE
COFFEY BURLINGTON, P.A.
2601 South Bayshore Drive
Miami, Florida 33133

On behalf of the Defendant:

DORI K. STIBOLT, ESQUIRE
FOX ROTHSCHILD, LLP
777 South Flagler Drive, Suite 1700
West Palm Beach, Florida 33401

\- - -

I N D E X

\- - -

Direct Examination by Ms. Stibolt Page 4

\- - -

E X H I B I T S

\- - -

Defendant's Exhibit No. 1 Page 11
Defendant's Exhibit No. 2 Page 11
Defendant's Exhibit No. 3 Page 14
Defendant's Exhibit No. 4 Page 30
Defendant's Exhibit No. 5 Page 37
Defendant's Exhibit No. 6 Page 41
Defendant's Exhibit No. 7 Page 43

| | |
|---|---|
| Defendant's Exhibit No. 8 | Page 49 |
| Defendant's Exhibit No. 9 | Page 56 |
| Defendant's Exhibit No. 10 | Page 59 |
| Defendant's Exhibit No. 11 | Page 64 |
| Defendant's Exhibit No. 12 | Page 70 |
| Defendant's Exhibit No. 13 | Page 72 |
| Defendant's Exhibit No. 14 | Page 75 |
| Defendant's Exhibit No. 15 | Page 82 |
| Defendant's Exhibit No. 16 | Page 83 |
| Defendant's Exhibit No. 17 | Page 85 |
| Defendant's Exhibit No. 18 | Page 86 |
| Defendant's Exhibit No. 19 | Page 87 |
| Defendant's Exhibit No. 20 | Page 87 |
| Defendant's Exhibit No. 21 | Page 89 |
| Defendant's Exhibit No. 22 | Page 92 |
| Defendant's Exhibit No. 23 | Page 96 |

P R O C E E D I N G S

\- - -

Deposition taken before Christina Andrioff, Court Reporter and Notary Public in and for the State of Florida at Large, in the above cause.

\- - -

Thereupon,

(PETER E. SHAPIRO, P.A.)

having been first duly sworn or affirmed, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. STIBOLT:

Q Good morning, Mr. Shapiro, can you please state your full name for the record, please.
A Peter Evan Shapiro.
Q Peter Evan?
A Evan is my middle name.
Q E-V-A-N?
A E-V-A-N.
Q What is your current home address?
A 2425 Deer Creek Road, Weston.
Q Does anyone live at that address with you?
A My wife and eighteen year old son.
Q How long have you lived at the Deer Creek address?

A Sixteen years.
Q Can you tell me a little bit about your educational background, Mr. Shapiro?
A Starting with high school, college?
Q College.
A College.
Q I assume you graduated from high school?
A I did. I attended and graduated Boston University graduating 1983 with a degree in bachelor's of science and business administration with a concentration in accounting and management information systems. I went to law school at Syracuse University graduating 1988.
Q Any further education?
A No.
Q You said you graduated from Boston University with a degree in business administration?
A Bachelor's of science in business administration.
Q With a concentration in accounting?
A And management information systems.
Q What is management information systems?
A It was computer oriented systems/technology management.
Q Are you admitted to the Florida Bar?

A Yes.
Q And what year were you admitted if you remember?
A 2002.
Q Are you admitted to any other state bars?
A I am admitted in New York State, I was admitted in 1988 or '89, I was also admitted in DC and Connecticut.
Q What year were you admitted to the bar in DC?
A '88 or '89.
Q Same question regarding Connecticut, what year were you admitted to the bar?
A 1988 or '89.
Q And are all of your bar licenses active?
A No, I think Florida and New York are the only active.
Q Any other courts where you're admitted as a lawyer?
A Federal Court Southern District of Florida, Middle District of Florida and the bankruptcy court Southern District.
Q Southern District of Florida?
A Of Florida.
Q Are you currently employed?

A Yes.
Q Who employs you?
A I have my own law firm.
Q What is the name of that firm?
A Peter E. Shapiro PA doing business as Shapiro Law.
Q What is your title at Shapiro Law?
A Principal and president.
Q And how long have you had your own firm?
A February 2013.
Q How many employees does Shapiro Law have?
A Just myself.
Q Has that always been true just one employee?
A Yes.
Q What areas of practice do you engage in at Shapiro Law?
A Bankruptcy law, real estate, business law, commercial transactions, I serve as a mediator and arbitrator, commercial law, business transactions.
(Whereupon, a brief recess was taken.)
BY MS. STIBOLT:
Q I'm sorry about that, Mr. Shapiro, you were describing --
A The areas of practice.

Q Yes, you were describing the areas of practice, the last thing I wrote down was mediator or arbitrator?
A Yes, I am a FINRA mediator/arbitrator, I am a mediator on the panel for the bankruptcy courts.
Q Are you a certified mediator?
A I am not a certified mediator.
Q What did you do prior to opening your own firm Shapiro Law?
A Before going to law school?
Q You don't need to go back that far, what was your employment before --
A Going chronologically?
Q Yes.
A I was a partner at Arnstein & Lehr.
Q Were you practicing in the same general area of law?
A Some of the areas, I was not a mediator or arbitrator, I was doing more bankruptcy.
Q How long were you employed at Arnstein & Lehr?
A 2010 to 2013.
Q What was your title at Arnstein & Lehr?
A Partner, non-equity partner.

Q And prior to Arnstein & Lehr, where were you employed?
A I was at Shutts & Bowen from 2004 through 2010.
Q What location were you at for Shutts?
A Fort Lauderdale.
Q What location were you at for Arnstein & Lehr?
A Fort Lauderdale.
Q What titles did you hold at Shutts & Bowen when you were employed there?
A I was a partner, I am trying to recall if I came as an -- I think I was a partner when I started in 2004 but soon thereafter, I don't think I was a partner, I was appointed as a partner.
Q What areas of law were you practicing when you worked at Shutts & Bowen?
A Bankruptcy, real estate, transactional work.
Q Have you ever practiced law as a litigator?
A Yes.
Q What years did you engage in litigation as a lawyer to practice law in?
A I was doing litigation at Shutts and

Arnstein and my own firm.
Q What percentage of your practice at your own firm is litigation versus transactional?
A I would say at least fifty to sixty percent.
Q Fifty to sixty percent is litigation?
A Just give me a second to kind of quantify.
Q Sure.
A I would say currently fifty percent.
Q What kind of clients do you service at Shapiro Law?
A Individuals, businesses, banks; not for profit, I served on the board and provide a fair amount of legal counsel.
Q What banks do you represent?
A Quontic Bank, I handle litigation foreclosure work, Grove Gate Financial, it is not a bank but buys portfolios of distressed loans and I handle litigation as well as transactional work for them; other banks, currently, I can't think of others, those are current clients.
Q Do you have any other professional licenses besides your bar licenses that we talked about?
A I was a certified public accountant in New

York, the license is either inactive or lapsed, I have not maintained it.

Q Any other licenses?

A No.

Q Mr. Shapiro, I handed you what I marked as Wells Fargo Exhibit 1, is that a document you're familiar with?

A Yes, it looks like a printout from my firm's website.

(Whereupon, Defendant's Exhibit No. 1 was marked for identification.)

BY MS. STIBOLT:

Q And who created, I am going to call this a bio of yourself, who created this bio?

A I created it and it's evolved, I think there was input or edits from, oh, good, I am glad you have the name of Townsquare Interactive who hosts the website.

Q That's just how it printed. Is that who has provided input?

A Some input but most of the text is mine.

Q Would you describe Exhibit 1 as an accurate bio of yourself?

A Yes.

(Whereupon, Defendant's Exhibit No. 2 was

marked for identification.)

BY MS. STIBOLT:

Q Mr. Shapiro, are you familiar with the Florida Bar website?

A Yes.

Q I handed you what I marked as Exhibit 2 which came from the Florida Bar and was printed out as your Florida Bar member profile, are you familiar with this document?

A Yes.

Q And is that your bar number in Exhibit 2 615511?

A Yes, it is.

Q And the address of your law firm?

A That is correct.

Q Has that always been Shapiro Law's address?

A Previously -- I have been at the current address since April 2017 and previously I was at 1351 Sawgrass Corporate Parkway, Sunrise.

Q How long were you at the Sawgrass address?

A I believe early 2013.

Q So only two locations for Shapiro Law?

A Correct.

Q And the Email address that is listed on

your Florida Bar website, pshapiro@shapirolawpa.com, is that your current Email address?
A Yes.
Q Do you use any other Email addresses for business?
A Mostly, no, I have a secondary address for court purposes, which is peter.shapiro29@Gmail.com.
Q Peter.shapiro29?
A At Gmail.com.
Q Any other Email addresses that you use in your law practice?
A None.
Q Would you describe this member profile from the Florida Bar as accurate?
A Yes, it includes additional practice areas that I didn't mention earlier but this accurately reflects areas in which I practice.
Q And does the federal court list accurately reflect the federal courts you're admitted to as an attorney?
A District courts in New York, I would have to doublecheck whether I am current and in good standing in those courts; but, as to the Florida courts, I am admitted and in good standing.
Q Thank you. Mr. Shapiro, I handed you a

document that reflects a CPA license for yourself in New York, are you familiar with your license number or what was your license number for your CPA?
A I don't recall the number.
(Whereupon, Defendant's Exhibit No. 3 was marked for identification.)
BY MS. STIBOLT:
Q The issue date indicates it was issued on May 13, 1986, do you have any reason to believe that information is not correct?
A No.
Q You indicated you let that license lapse?
A Correct.
Q Do you recall when it lapsed?
A I can't recall.
Q At some point, you lived in New York?
A Yes.
Q When did you move from New York to Florida?
A 2002.
Q Do you hold a Florida CPA license?
A No.
Q Have you ever worked as a CPA?
A I worked from 1983 to 1985 for Touche Ross in Boston, I was not a CPA at that time because to

become certified you needed to work two years, I worked a little over two years, passed the exam and then went to law school. Eventually, I became a CPA, but I was not a CPA while working at Touche Ross.

MS. STIBOLT: Can we take a quick break, I need to get a new pen, this one has died on me.

(Whereupon, a brief recess was taken.)

BY MS. STIBOLT:

Q What was the name of the company you worked for?

A Touche Ross, it is now know Deloitte.

Q So I understand what you were saying about the CPA license, you never worked as a licensed CPA?

A The license was obtained or received subsequent to my employment at Touche Ross.

Q And then you went on to law school?

A Correct.

Q During the time you maintained the CPA license, was it always in good standing?

A As far as I know, yes.

Q Did you ever have any disciplinary actions against your CPA license?

A No.
Q Any disciplinary actions against your Florida bar license?
A No.
Q Any disciplinary actions against your New York bar license?
A No.
Q Any adverse action against any license that you held besides a driver's license?
A None.
Q Where does Shapiro Law bank?
A With Citibank.
Q And has Shapiro Law always maintained its accounts at Citibank?
A Yes.
Q How many accounts does Shapiro Law have at Citibank?
A There is an operating account and a trust account.
Q Do you have a banker at Citibank that you work with regularly?
A No, the branch that I go to is in Weston, there were several people who have been there for a while but there is no one particular person that I can say I have a longstanding relationship.

Q Who is responsible for initiating wire transfers from Shapiro Law?
A I am.
Q How many wire transfers would you say you initiated on an annual basis from Shapiro Law?
A In the current year?
Q We can start with 2018.
A And that would be excluding -- For client related matters, I would guesstimate less than a dozen for the current year.
Q What other wire transfers are you initiating from Shapiro Law that are not client related?
A I stand corrected, what I was thinking and I will just explain, if I received a retainer from a client, it would go into the trust account and then to my operating account but that's an interbank transfer not a wire transfer.
Q So I am asking about how many wire transfers you initiate out of your accounts on an annual basis?
A Current year, thus far, less than a dozen.
Q And when you are undertaking wire transfers out of your Citibank account, do you wire out of the trust account or the operating account or

both?

A Could be both.

Q What is your normal procedure for initiating a wire transfer from Citibank?

A Upon receipt of written instructions, I log onto my Citibank account which is password protected, I input the beneficiary name, account information, amount and any other required information and send the wire.

Q Does Citibank utilize a two factor authorization for wires?

A It may, I am not sure if that's what it is called when I have processed wire transfers.

Q Do you get some kind of confirmation or do they send you some kind of code to input?

A Before or after the transfer?

Q Let's talk about 2018.

A Before I initiate a transfer, my account requires that I input a code, that code is generated by a device that Citibank provided me.

Q Like a key fob?

A Yes.

Q Little stick?

A Yes, it's not a stick, it looks like a tiny calculator and a code is randomly generated

each time I initiate a wire transfer. There actually may be two codes generated now that I think about it.

Q Do you use a device code that's randomly generated that you receive from Citibank when you log into your account?

A Yes.

Q And that's for any type of transaction?

A That's for accessing the accounts; upon initiating a wire transfer, there is another randomly generated code that must be inputted for processing.

Q How long have you been utilizing the device that Citibank provided to you for access to your account?

A Forever.

Q Since the account was opened?

A I don't know. If the account has been opened since 2003 or '04; initially, I don't recall the device as being necessary, but I want to say for at least ten years since it was provided to me, I have had to utilize it.

Q Now you said the Citibank account has been opened since 2003/2004?

A As best as I can recall.

Q How was it titled when it was opened?
A It's always been the same, Peter E. Shapiro PA.
Q Have you always maintained a trust account at Citibank?
A As best as I can recall, yes.
Q What is the title of the trust account at Citibank?
A I think it is Peter E. Shapiro PA and below that there is a line that says trust account. I may stand corrected, the trust account may have only have existed when I started my own firm, I don't think I needed it before that.
Q That was 2013 when you opened Shapiro PA?
A 2013, correct.
Q But you maintained the Peter E. Shapiro PA account at Citibank from 2003 to 2004 predating the creation of your law firm?
A Correct.
Q Regarding the wire transfers that you initiated on behalf of Shapiro PA, have you always done those electronically?
A Yes.
Q You have never gone to the branch in person to initiate a wire transfer?

A As far as I can recall, correct, I can't recall going to the bank to initiate a wire transfer manually for five years or more.

Q How about telephone, have you ever utilized a telephone procedure to initiate a wire transfer from your Citibank accounts?

A No.

Q Does Shapiro Law have any written policies and procedures for wire transfers?

A No.

Q You indicated you're the only employee at Shapiro Law?

A That's correct.

Q The person responsible for initiating wire transfers on behalf of Shapiro Law is yourself?

A Correct.

Q Prior to the wire transfer at issue, have you ever heard of business Email compromise fraud?

MR. CROCKETT: By that name?

MS. STIBOLT: Business Email compromise fraud?

THE WITNESS: I have never heard of that term.

BY MS. STIBOLT:

Q What type of Internet security does

Shapiro Law utilize?
A I have several fraud scam antivirus programs on my system.
Q What kind of system do you use?
A What do you mean?
Q What kind of computer do you have, Windows?
A Windows 10 Dell computer.
Q Do you have a server for Shapiro Law?
A Do I have a server, no.
Q Do you have any contract employees that assist you with your computer system at Shapiro Law?
A No.
Q What type of Email security does Shapiro Law utilize?
A I don't know what the name of the programs are.
Q Do you use encrypted Emails for Shapiro Law?
A No.
Q When initiating wire transfers prior to the wire transfer at issue in this case, did you have any process for confirming wire instructions?
A After initiating a wire transfer, I always request confirmation of receipt of funds from the

beneficiary.
Q What is the process for the request for confirmation, when do you undertake that request?
A Usually it's by Email confirmation.
Q When do you send that Email in relation to the wire transfer?
A Typically, after the wire has been initiated.
Q Within days, hours?
A I would say typically within the hour of it having been initiated.
Q Does Shapiro Law have any policy when it receives two sets of wire instructions?
A No.
Q Have you ever received two sets of different wire instructions setting aside the transaction at issue in this case?
A Not that I can recall.
Q Who is Todd Shapiro?
A My brother.
Q Older brother, younger brother?
A He is younger.
Q Is Todd Shapiro a client of Shapiro Law?
A No.
Q Do you provide legal services to Todd?

A Individually, no; business-wise, yes, Todd was a principal of Leon Shapiro Motor Sales of which I did provide services.

Q Who is Leon Shapiro?

A He was my grandfather.

Q So Todd's company is Leon Shapiro Motor Sales?

A It wasn't just Todd, he was a shareholder along with Sidney Shapiro.

Q Who is Sidney Shapiro?

A My father.

Q Is Sidney alive?

A No.

Q Are you a shareholder of Leon Shapiro Motor Sales?

A No.

Q Have you ever been a shareholder?

A No.

Q Do you have any interest in that entity?

A No.

Q Have you ever held any interest in Leon Shapiro Motor Sales?

A No.

Q I think you said Leon Shapiro Motor Sales is a client of Shapiro Law?

A Yes.
Q Do you have any engagement letter between Leon Shapiro Motor Sales and Shapiro Law?
A No.
Q Do you invoice Leon Shapiro Motor Sales for legal work you do for them?
A No.
Q Does Todd Shapiro have any other companies that he is involved with that you're aware of?
A Not that I'm aware of.
Q Have you ever heard of Shapiro Real Estate Holdings?
A Yes.
Q What is your understanding of that entity?
A It's an entity that owns real estate and was owned by my father Sidney.
Q Does Shapiro Real Estate Holdings still exist if you know?
A It does exist.
Q What type of company is it?
A It's an LLC. Sidney was the sole member, Sidney has passed, the estate is now the beneficiary of his interest.
Q Is Sidney's estate still open?
A Yes.

Q Where is that estate action pending for Sidney?
A Onondaga, O-N-O-N-D-A-G-A, County, New York.
Q You're going to have to do that again.
A It's Central New York, Syracuse, Onondaga County.
Q That sounds like a Native American name.
A It is.
Q Does Shapiro Real Estate Holdings still hold real estate in the area?
A Yes.
Q Is Shapiro Real Estate Holdings a client of Shapiro Law?
A I don't think so, I don't think I rendered any legal services for the entity.
Q Who is the personal representative of Sidney's estate?
A I am.
Q Do you have an attorney representing you in New York?
A Yes, I do.
Q Who is that?
A It's the firm of Barclay Damon.
Q Is there a particular attorney?

A Yes, her name escapes me. When we break, I will look it up.
Q Do you have any other siblings besides Todd?
A Yes, two, brother Michael, sister Joanna.
Q Where is your brother Michael located?
A Chicago.
Q And your sister Joanna, where is she located?
A Boston.
Q And Todd Shapiro, where is he located?
A He lives in Manlius and works in Oswego.
Q That's New York?
A Yes.
Q What is Todd's involvement with Shapiro Real Estate Holdings at present?
A None.
Q Who is managing Shapiro Real Estate Holdings at present?
A The ownership interest is part of the estate and I am the personal representative.
Q So if any business comes up, you're managing the interest?
A Yes.
Q Besides Leon Shapiro Motor Sales, is Todd

engaged in any other kinds of business that you're aware of?
A Not that I'm aware of.
Q What does Leon Shapiro Motor sales do?
A It was a car dealership, the business was sold in November 2017.
Q Was Leon Shapiro Motor Sales affiliated with any type of particular car company?
A It had franchises for Chrysler, Dodge, Ram trucks and Jeep.
Q Do you know who the buyer of Leon Shapiro was?
A Rich Burritt Motors, LLC.
Q Were you involved in the deal between Leon Shapiro Motor Sales and Rich Burritt Motors?
A Yes.
Q What was your involvement?
A I represented the seller.
Q Did you create any documents as part of that sale?
A Yes, that was a purchase and sale agreement, there was a lease agreement and there were ancillary closing documents.
Q Did you invoice Leon Shapiro Motor Sales for that work?

A No.

Q What would you estimate the value of your legal work was for that transaction in November of 2017 between Leon Shapiro Motor Sales and Rich Burritt Motors?

A Priceless.

Q Why do you say it is priceless?

A I would characterize the sale as distressed, the business was experiencing financial challenges which necessitated an expedited sale process. There was interest expressed by others, I was intimately involved in the vetting of purchasers which resulted in the offer from Rich Burritt Motors which was consummated. When I say my services were priceless, not only did they not receive an invoice, I also considered myself a broker, investment banker, if you will, in evaluating and negotiating with others.

Q How many hours would you say that you spent on the research and sale transaction?

A Beginning in August 2017 through closing, which also involved negotiations with the current floor plan lender as well as an additional bridge lender, in total, my best guestimate would be a couple hundred hours.

Q What is your normal average rate that you charge clients, your hourly rate?
A It's currently the four hundred fifty an hour, that rate varies depending on the client.
Q What was it in 2017?
A Four hundred twenty-five.
(Whereupon, Defendant's Exhibit No. 4 was marked for identification.)
BY MS. STIBOLT:
Q Mr. Shapiro, I have handed you a document I marked as Defendant's Exhibit 4, can you identify that document, please?
A That's a closing statement between Leon Shapiro Motor Sales and Rich Burritt Motors.
Q Is that a document you're familiar with?
A Yes.
Q Did you create that document?
A Yes.
Q This document is related to the sale of Leon Shapiro Motors that we have been discussing?
A Yes, it is.
Q And Sidney Shapiro, it appears was alive during the transaction?
A Yes, he was.
Q What is Sidney's date of death?

A November 29, 2017.
Q How many employees did Leon Shapiro Motors have at the time of this transaction?
A My best estimate is between twenty and twenty-five.
Q What was Todd's title at Leon Shapiro Motors before the sale of the entity?
A It might have been vice president, vice president, general manager.
Q Do you know how long Todd worked for Leon Shapiro Motors?
A I want to say twenty years or more, twenty-five.
Q Is your brother currently employed?
A Yes.
Q Your brother Todd?
A Yes.
Q Do you know what he is doing at present for employment?
A He is working for Rich Burritt Motors.
Q Do you know his title under Rich Burritt Motors?
A I don't know his title. If it helps, I know he is selling cars and I don't think -- I am fairly certain he does not have an ownership

interest in the purchase of Rich Burritt Motors.
Q If you know, where did Leon Shapiro Motors bank prior to the sale of the company?
A I'm not sure, I know they had accounts or an account with Ally Financial, but I don't think that's where they banked in terms of checking.
Q How about Shapiro Real Estate Holdings, does Shapiro Real Estate Holdings have any bank accounts?
A Not that I'm aware of.
Q Do you know Mr. James Messenger?
A Do I know an individual named James Messenger, yes.
Q When did you come to know Mr. Messenger?
A As part of this transaction.
Q And by this transaction, you are talking about the sale of Leon Shapiro?
A The sale of Leon Shapiro Motor Sales to Rich Burritt Motors.
Q What was Mr. Messenger's role in the transaction between Leon Shapiro Motors and Rich Burritt Motors?
A He was attorney for a lender that provided financing to Leon Shapiro Motor Sales sometime in 2017.

Q Do you know the name of that lender?
A It was called the Rasselas Trust, something to that effect.
Q And they were a lender to Leon Shapiro Motors in 2017?
A Yes.
Q Prior to this transaction, had you ever had legal interaction with Mr. Messenger before?
A No.
Q Did you know him as an attorney in Syracuse?
A Only through this transaction.
Q Did you know Mr. Messenger was located in Syracuse?
A That's what I was told.
Q Who told you that?
A My brother Todd.
Q Are you familiar with Syracuse, New York?
A Yes, generally.
Q Have you ever lived there?
A My parents moved from Oswego to Syracuse when I was in college so living there sort of.
Q Occasionally, on the weekends?
A Yes.
Q Did you ever establish your own residence

in Syracuse, New York?

A No.

Q Had you ever wired funds to Mr. Messenger before this transaction?

A No.

Q Had your law firm ever wired funds to Mr. Messenger's law firm before this transaction?

A No.

Q You may have told me this already, but what was Todd's interest in Leon Shapiro Motors?

A He had an ownership stake in the entity.

Q And what was his ownership stake?

A Approximately, twenty-eight percent.

Q And who else, if you know, held ownership stakes --

A Sidney Shapiro owned the balance.

Q Sidney held the rest?

A Yes.

Q Who represented Rich Burritt Motors in the transaction we have been talking about?

A He had an attorney as part of the review of the purchase agreement located in Long Island and had another attorney who represented him at the closing.

Q Do you recall the attorney on Long Island,

do you recall that attorney's name?
A I don't recall.
Q And the attorney that representing Rich Burritt Motors at closing, do you recall that attorney's name?
A No, it was an attorney in Oswego.
Q Did you attend the closing for this transaction?
A Yes.
Q Do you recall what date the closing was for the transaction?
A I believe it was November 17th or November 21st, I recall it was a Friday, in 2017.
Q Who else do you recall attending the closings of the transaction between Leon Shapiro Motors and Rich Burritt Motors?
A Rich Burritt with his attorney and a paralegal. The closing took place at Rich Burritt's lender's counsel's office in Oswego. Rich Burritt's lender was Pathmark, it's a known lender in upstate New York and the closing was at the offices of the attorney in Oswego whose name escapes me, I can't think of his name.
Q If you can think of it, let me know. Was Todd at the closing?

A Yes.
Q Was Sidney at the closing?
A No.
Q Was Mr. Messenger at the closing?
A No.
Q Was there anybody else at the closing that we haven't talked about?
A There was a representative of Rich Burritt's lender's bank whose name I don't know.
Q That was Pathmark as the lender?
A Yes.
(Whereupon, a brief recess was taken.)
THE WITNESS: The attorney for Rich Burritt's lender was Michael Stanley, he's an attorney in Oswego; my estate attorney is Marcy Bends Robinson; Rich Burritt's closing attorney was Kevin Curacoley, paralegal was Terese Switzer.
BY MS. STIBOLT:
Q Thank you. Rich Burritt Motors, were they a client of Shapiro Law?
A No.
Q How did you obtain information regarding the payoff information for the lender that Mr. Messenger represented?
A He provided instructions to my brother

Todd who, in turn, forwarded his written instructions to me.

Q Prior to the closing of the deal we have been talking about, did you have any direct communication with Mr. Messenger?

A Some contact as part of the loan that his client provided, there were documents prepared by Mr. Messenger and distributed prior to execution.

Q Those were distributed directly to you at Shapiro Law from Mr. Messenger?

A No, I don't think they were, I think they were sent directly to Todd Shapiro.

Q My question was did you, as the principal of Shapiro Law, have any direct communications with Mr. Messenger prior to the closing of the transaction between Leon Shapiro Motors and Rich Burritt Motors?

A Very little if any, I can't recall specific conversations.

(Whereupon, Defendant's Exhibit No. 5 was marked for identification.)

BY MS. STIBOLT:

Q Mr. Shapiro, I handed you a set of documents that start with a Bates stamp number PS68 ant goes through PS71, are you familiar with these

documents?
A Yes.
Q Can you identify them for the record, please.
A The first page is an Email from Mr. Messenger to Todd Shapiro PS 68, the second page PS69 is a letter addressed to Todd for Shapiro Real Estate Holdings, LLC which is a mortgage payoff letter dated November 14, 2017 and PS70 71 is a satisfaction of mortgage unsigned.
Q And the date of the Email?
A November 14, 2017.
Q And did you receive a copy of this Email at some point?
A I believe so, yes.
Q Did you receive it prior to the closing?
A I believe so, yes.
Q Do you have any record of when you might have received this Email?
A Written record, it would have been forwarded to me from Todd Shapiro.
Q Do you have the forward legend that would show when you received it?
A I assume it was provided in response to discovery requests.

Q If I did not receive that forward legend, do you know where it might be?

A What is a forward legend?

Q When you send an Email, there's a forward and then the Email is below it like a string, do you have the forward section that would show when Todd forwarded this November 14th Email?

A I should, yes.

MR. CROCKETT: I don't think we got that particular version, it's going to be the same content as this, this one seems to be something Jim Messenger printed and maybe faxed to you or scanned to you. If there is one -- For instance, she is asking, it might have been forwarded to you on November 15th or 16th, you know, from Todd, that version, we don't have, same substance but --

THE WITNESS: I will look for it.

BY MS. STIBOLT:

Q I would appreciate receiving in response to Well's Fargo request for production, if you have a copy of the Email that Todd forwarded to you that encloses this November 14, 2017 Email.

A Okay.

Q So you were aware that Todd and Mr. Messenger were exchanging information regarding

parts of the deal between Leon Shapiro Motors and Rich Burritt Motors?

A Yes.

Q Was it Todd's practice to forward you copies of each Email he received related to this deal?

A Yes.

Q Would you review those Emails when you received them?

A Yes.

Q Do you have a recollection of receiving Exhibit No. 5 at some point?

A Yes.

Q Do you recall being aware that Mr. Messenger was located in Syracuse, New York?

A According to the address on the Email, yes, I am sorry, address on the payoff letter, yes.

Q And the lender that Mr. Messenger was representing, do you know where that lender was located?

A No, but I do know the person that CCd and the payoff letter Lou Santaro I believe was the beneficiary of the trust and the principal, if you will, that provided the loan.

Q And did you know Lou Santaro outside of

the lending transaction?

A I did not, he was a colleague of my brother Todd.

Q Does he work at Leon Shapiro Motors?

A No, they had a relationship, a personal relationship, he was not an employee or involved in the business in any way.

Q When you say colleague, I thought they worked together?

A Yes.

Q Do you have a recollection of receiving Exhibit 5 prior to the closing of the transaction?

A I believe I received it prior to the closing, yes.

MR. CROCKETT: If we had a doubt about the date, the 17th was a Friday, November 17th was a Friday, I am looking at the calendar, the 21st was a Tuesday.

(Whereupon, Defendant's Exhibit No. 6 was marked for identification.)

BY MS. STIBOLT:

Q Sir, I have handed you what I marked as Defendant's Exhibit No. 6, is that a document you're familiar with?

A It's an Email to Todd Shapiro from Jim

Messenger with wire transfer instructions from James Messenger.

Q Is there an attachment?

A The attachment says wire transfer instructions Bate PS73.

Q And those wire instructions sent by Mr. Messenger reflect that he banked at M&T Bank?

A I don't know that, the instructions provide the name and address of the bank, M&T Bank, in Syracuse, New York.

Q Mr. Messenger had directed Todd to wire to Mr. Messenger's escrow account at M&T Bank, correct?

A The Email says, "Here are my escrow wire transfer instructions for tomorrow's payoff."

Q And the wire transfer instructions attached to that provide instructions for Mr. Messenger's IOLA escrow account?

A That's what the instructions say.

Q And the instructions say that the bank that Todd should wire to is the M&T Bank located in Syracuse, New York?

A That's what it says.

Q Did Todd forward this Email to you?

A I believe he did.

Q Did he forward this Email to you prior to

the wire that's at issue?
A I believe he did.
Q Did you review the wire instructions that were attached to this Email?
A I believe so, yes.
MR. CROCKETT: Is this the same thing where you don't have a version that shows it is received by Peter?
MS. STIBOLT: This one I think I do, I haven't gotten there yet.
MR. CROCKETT: No problem, I am just saying you should --
MS. STIBOLT: This one I do but there is several I do not have.
MR. CROCKETT: His homework, he will take the depo exhibits and look through his Outlook for received versions, conversations, acknowledged we received, whatever, I got it, whatever.
BY MS. STIBOLT:
Q Going back to Exhibit 6, before we get to Exhibit 7, what is the subject of the Email that Mr. Messenger sent to Todd on November 16, 2017?
A M&T Bank escrow account wire transfer instructions.
(Whereupon, Defendant's Exhibit No. 7 was

marked for identification.)

BY MS. STIBOLT:

Q Mr. Shapiro, I handed you what I marked as Exhibit 7, is that a document you recognize?

A It's an Email forwarded -- Yes.

Q Can you please describe it for the record.

A Email forwarded by Todd to myself which attaches same Email and wire transfer instructions in Exhibit 6.

Q When did you receive the forwarded Email from Todd based on Exhibit 7?

A It was sent by Todd to me at 4:49 p.m. November 16, 2017.

Q Did you send the Email to someone else upon your receipt?

A I don't think so.

Q If you look at the very top, it says Peter.shapiro29@gmail.com?

A Oh, I see.

MR. CROCKETT: I will tell you what this is, this is my office, this is forwarded to us for production.

MS. STIBOLT: When he forwarded documents to you for production, he forwarded it to Peter Shapiro?

MR. CROCKETT: Apparently, we were BCCd or CCd on here because this is my secretary.
MS. STIBOLT: So you received this document on November 16, 2017?
MR. CROCKETT: No, no, I received it because we produced it.
THE WITNESS: I forwarded it from my Gmail account to my account, I could say maybe possibly, probably, but without the actual Email address, I don't know.
BY MS. STIBOLT:
Q And peter.shapiro29@gmail.com is your Email address?
A Yes.
Q How long have you used that Email address?
A I don't know, it's been a long time.
Q A long time, years?
A Years.
Q Would you recognize Todd's Email address?
A Toddshpr@yahoo.com, yes.
Q Is that Todd's Email address?
A It appears to be, yes.
Q Is that an Email address you're familiar with?
A Yes.

Q How long has Todd used toddshpr@yahoo.com as an Email address?

A I don't know.

Q Do you know any other Email addresses that Todd uses?

A No.

Q There is an Email for Jim@messengerlaw.net, is that Email address familiar to you?

A Other than what is in front of me, I have no familiarity with it.

Q So it appears based on Exhibit 7 that Todd received the M&T wire instructions from Mr. Messenger on November 16th and then he forwarded them to you, would you agree?

A That's how it appears.

Q Do you have any recollection of him forwarding the wire instructions for this deal on November 16, 2017?

A Other than what is in front of me, this is what I see.

Q Then it appears that you petershapiro29@gmail.com, that same day, November 16th, forwarded the instructions to Peter Shapiro but we're not sure of the Email address?

A Correct.
Q At some point, the Email was forwarded to your counsel and counsel's assistant is Vivian Montejo and she is printed it?
A The last part is correct.
Q That's what happens when the Emails get forwarded around. Did you read the enclosed Email from Mr. Messenger that is part of Exhibit 7 when you received it?
A Yes.
Q What is the substance of Mr. Messenger's Email, what does it say?
A We're looking at Exhibit 7?
Q Yes, sir.
A Here are my escrow account wire transfer instructions for tomorrow's payoff.
Q Did you review the attached wire transfer instructions upon receipt of the November 16th Email?
A If it was attached to the Email when I received it, I reviewed it.
Q Did you notice any errors in the November 16th wire transfer instructions?
A Did I notice any errors, I don't know what you mean.

Q When you reviewed it on November 16th, did anything jump out at you during your review?
A No.
Q Did you notice any capitalization errors in the November 16, 2017 wire instructions?
A No.
Q Did you notice any spelling errors in the November 16, 2017 wire instructions?
A No.
Q Did you notice that the bank identified on the November 16th wire transfer instructions was located in New York?
A Yes.
Q You knew Mr. Messenger was also located in New York?
A I only knew what his instructions said.
Q Upon the receipt of the November 16, 2017 instructions, did you take any steps to confirm these instructions?
A None that I can recall.
Q Did you call Mr. Messenger to confirm the instructions?
A Not that I can recall.
Q Did you Email Mr. Messenger to confirm the November 16th instructions?

A Not that I can recall.
Q Did you discuss the November 16, 2017 wire instructions with Todd?
A I might have.
Q Did you discuss with anybody else the November 16, 2017 wire instructions?
A No.
Q Did you discuss the instructions that you received on November 16th with anyone at Citibank?
A No.
(Whereupon, Defendant's Exhibit No. 8 was marked for identification.)
BY MS. STIBOLT:
Q I have handed you what I marked as Defendant's Exhibit No. 8, can you identify that document, please.
A This Email was forwarded by Todd to me at my Gmail which includes forwarded message from Messenger to toddshpr@yahoo.com with attached wire instructions.
Q When is the date of this Email string?
A November 17th, it's from Messenger starting at 9:10 a.m.
Q Jim Messenger purports to send an Email to Todd your brother at toddshpr@yahoo.com?

A On November 17, 2017 at 9:10 a.m. that's what it appears.
Q And then Todd forwards you the Email on November 17th at 9:17 a.m. to peter.shapiro29@gmail.com?
A That's what it appears, yes.
Q And then, again, it looks like you peter.shapiro29@gmail.com forward it to another Email account that you own?
A I believe so; but, again, we can't ascertain that Email.
Q Do you have a record in your Gmail account going back to November 16th, November 17, 2017?
A Do I have a record, my Gmail accounts would include Emails received as well as forwarded by me.
Q In addition to trying to find the Emails that we talked about that you received in a forwarded fashion from Todd, I would like to see the Email that is forwarded from peter.shapiro29 to the Email that is listed just as petershapiro?
MR. CROCKETT: Would you like him to print them or forward them to me? If it is printed, it is going to be something like this with petershapiro on here.

MS. STIBOLT: I just would like to confirm that when you are forwarding an Email from peter.shapiro29@gmail and it says petershapiro, that is going to your PA account so I don't know how it will look.

MR. CROCKETT: Printing would work, if you can print them and scan them to me or you can forward them to me.

BY MS. STIBOLT:

Q Do you have any other Email addresses that you use besides peter.shapiro29@gmail and the PA Email address?

A No.

Q Upon receipt of Exhibit No. 8, did you read the substance of the Email that was from Mr. Messenger?

A I believe so, yes.

Q Can you please read the substance for the record.

A "Please here are my escrow accounts for today payoff wire transfer instructions. Our M&T Bank is currently on audit as a result, can't receive funds for now. Please let the wire transfer be made to this our Wells Fargo Bank. Find attached our bank details."

Q Does that Email give you any pause when you received it?
A I don't recall.
Q Did you notice there were words missing from the Email?
A I don't recall at that time.
Q Had you ever heard of a bank not being able to receive wire transfers because of an audit?
A Have I ever heard of the bank? No.
Q Did you review the enclosed wire transfer instructions that were attached to this Email?
A Yes.
Q Did you notice any errors in the 11/17 wire instructions?
A No.
Q Did you notice there were capitalization errors in the address that the bank listed?
A Yes.
Q Did you notice there was a spelling error in the wire transfer instructions?
A No.
Q Did you see the routing is spelled as routine?
A I see it now; but, at the time, I didn't see it as a spelling error.

Q Did you notice the bank location was in Texas?
A Yes.
Q Did you know Mr. Messenger was located in New York?
A I didn't know where he was located other than what his letterhead had said.
Q His letterhead indicated he was located in Syracuse, New York?
A That's correct.
Q What steps did you take to confirm the wire instructions received on November 17, 2017?
A I reviewed the information and set up a wire transfer instruction to my bank at Citibank based on this information.
Q What steps did you take to confirm the wire instructions with Mr. Messenger?
A I did not speak with him nor did I Email with him.
Q How about with Todd, did you discuss the fact that you had received different wire instructions?
A I might have, but I don't recall specifically.
Q Did you compare the wire instructions

received on November 16th for the M&T Bank with the November 17th wire instructions that had Wells Fargo listed as the receiving bank?

A I may have but I don't recall specifically.

Q Were you aware you had two sets of wire instructions from Mr. Messenger?

A I don't recall.

Q Did you discuss the fact that you had different wire instructions, two sets of wire instructions, with anyone at Citibank prior to the wire?

A No.

Q You said you received the November 17, 2017 wire instructions and you set up a wire to go to Mr. Messenger based on the November 17th wire instructions?

A Correct.

Q Why did you choose to rely on the November 17th wire instructions and not the November 16th wire instructions?

A They were more recent and I had no reason to believe there was anything wrong with these instructions.

Q Despite the missing words in the substance

of the Email and despite the capitalization errors and spelling errors?

MR. CROCKETT: Objection to form.

THE WITNESS: Correct.

BY MS. STIBOLT:

Q Did you utilize the two factor authorization we talked about before when you were setting up the wire instructions for the wire at issue?

A Again, I don't know what the two factor system is but the processing from my end required a security code to access the accounts and additional security code input from me in order to effectuate the wire transfer.

Q That was true for the wire transfer that is at issue in this case?

A Yes.

Q When you set up the wire instructions with your bank, did you communicate that to anyone?

MR. CROCKETT: Objection to form.

BY MS. STIBOLT:

Q Did you communicate the wire instructions that you set up prior to the wire transfer being effectuated, did you communicate that information to anyone?

A No.
(Whereupon, Defendant's Exhibit No. 9 was marked for identification.)
BY MS. STIBOLT:
Q Sir, I handed you what I marked as Exhibit 9, is that a document you're familiar with?
A The first page Bate's number PS74 from toddshpr@yahoo to Jim Messenger and that was forwarded from shapirosmfp@gmail to toddshpr@yahoo Friday, November 17th at 3:13, please see attachment. So the first page, I can't recall, the second page appears to be wire instruction confirmation from my account at Citibank.
Q So had you provided PS75 and 76 to Todd at some point?
A I think so, yes.
Q Looking at PS75, the source account Shapiro Trst, do you see that?
A Uh-huh.
Q Are you familiar with the last four digits of that account number?
A I believe that's my trust account.
Q And the scheduling below that says immediately upon approval?
A Yes.

Q And the destination includes an amount for $504,611.13?
A Yes.
Q And was that the correct amount for the wire as far as you know?
A As far as I know, yes.
Q And who is the beneficiary listed?
A Beneficiary is James H. Messenger, Junior.
Q And there is an address there?
A 440 S. Warren Street, Ste 703, Syracuse, New York 13202.
Q And there is an account number below that that ends in 0445?
A Yes.
Q And the bank is listed as Wells Fargo Bank in Cedar Park, Texas, correct?
A That's what it states, yes.
Q How did that information get inputted into Citibank wire system?
A By me through my account.
Q And there is a statement description Shapiro Real Estate Holdings, is that additional information you inserted into the wire instructions?
A Yes.
Q At the top of the document below above

source account, it says status process, do you see that there?

A Yes.

Q And above that under wire instruction confirmation, it says thank you for your request, your transaction is still pending, do you see that --

A Uh-huh.

Q -- information?

A Yes.

Q You forwarded this wire instruction confirmation from Shapiro Law's bank to Todd?

A I believe I did, but I don't see it as part of this attachment.

Q Shapirosmfp@gmail.com, is that an address you're familiar with?

A I believe that is -- I will call him the controller/accountant at Shapiro Motors, I will have to look up his name.

Q But that's an Email address you're familiar with?

A If it's his, yes, if it's the accountant's.

Q And then do you see at the top Todd Shapiro forwards this packet to Mr. Messenger on

November 17th?
A We see Jim Messenger's name but we can't tell which Email it went to.
Q Going back to Exhibit 9, the wire instruction confirmation; at the time that you forwarded this confirmation to Todd on November 17th, you had authorized the wire transfer to go through?
A I had instructed Citibank to process the wire in accordance with my instructions.
Q Your instructions were set forth on PS75?
A Yes.
Q Nobody else was involved in setting up the wire instructions with Citibank?
A Correct, nobody from my side.
Q You have no employees --
A No, nobody from my side.
(Whereupon, Defendant's Exhibit No. 10 was marked for identification.)
BY MS. STIBOLT:
Q Mr. Shapiro, I handed you a document I have marked as Wells Fargo Exhibit No. 10, is that a document you're familiar with?
A I don't see my name here so I don't recall seeing this.

Q Have you ever seen this document before?
A I don't know.
Q Do you know how you obtained this document?
A Was this produced by me in discovery?
Q It was.
A Then it must have been forwarded to me by Todd Shapiro.
Q Same homework.
MR. CROCKETT: You got some documents from Messenger and that's where this came from, it says on the document Messenger sent it to you.
THE WITNESS: To me.
BY MS. STIBOLT:
Q Same question about the other Emails that we looked at where it's an Email in your possession but we don't have the forwarding header, can you please review Exhibit No. 10 and let me know if you have a copy that shows it was forwarded to you by Todd or by Mr. Messenger?
MR. CROCKETT: I am not objecting to that, but I will tell you that we got some documents from Messenger and produced them because I didn't know we couldn't make an objection, I don't think this was seen in the time period that we're talking

about.

BY MS. STIBOLT:

Q Mr. Shapiro, this appears to be based on the way it looks a part of or follow up to Exhibit 9, would you agree, has the same legend at the bottom that starts with the TAS?

A I don't know what is TAS.

Q I don't know either. You would agree that the forwarded message at the bottom of Exhibit 10 and Exhibit 9 are identical?

A I don't know what any of this means on the bottom but if the information as printed is the same then they appear to be identical.

Q So Exhibit 9 is sent from the comptroller to Todd correct, shapirosmfp is your comptroller?

A Can we break just so I can look up his name because we're calling him comptroller and he has never been called comptroller before. I will give you his name and find his Email and provide some clarity. Sam Farfaglia.

Q Is shapirosmfp@gmail.com his Email address?

A I believe so.

Q Do you know if Sam Farfaglia is still employed?

A I believe he is by Rich Burritt Motors.
Q So Sam Farfaglia forwarded the Email to Todd at toddshpr@yahoo.com and then Todd on November 17th at 3:15 p.m. sends the same Email to Jim Messenger at jim@messengerlaw.net, correct?
MR. CROCKETT: Object to the form.
THE WITNESS: This says what it says and I can't speak to anything beyond that.
BY MS. STIBOLT:
Q Based on this document, this Email string, you recognize Todd's Email address, correct?
A I recognize the address. In light of what I saw subsequently, I don't know if this is Todd or somebody else using his Email address.
Q Have you discussed this situation with Todd, the wire transfer?
A Yes.
Q Has he provided you any documents from this Email account?
A Yes.
Q Have you produced those documents?
A I believe so, yes.
Q I don't believe I have seen them. I have seen Emails from you and I have seen Emails from Jim, I don't believe I received a set of Email from

Todd.

MR. CROCKETT: More homework, just doublecheck.

THE WITNESS: Okay.

BY MS. STIBOLT:

Q At the top of Exhibit 10, it appears that Jim Messenger responds to the Email that appears to be from Todd Shapiro within fifteen minutes, correct?

A In light of what I said earlier about an Email from toddshpr@yahoo.com and the uncertainty whether it was Todd, I have the same response as to Jim Messenger, we don't know if this was sent by Mr. Messenger or somebody else.

Q Can you read the substance of the Email that purports to come from Mr. Messenger?

A "Did they wire to the right bank? This receipts shows Wells Fargo Bank under my name. May bank is M&T. Jim."

Q That Email was sent at what time?

A 3:28 p.m. November 17th.

Q That is less than fifteen minutes from the Email that is shown below, correct?

A That appears to be, yes, yes.

Q Did Todd forward this Email to you at the

time?
A He may have, I just don't recall sitting here right now.
Q Did Todd call you or advise you that there was a problem with the wire instructions on November 17th?
MR. CROCKETT: Objection to the form.
THE WITNESS: He may have, I don't recall.
BY MS. STIBOLT:
Q Would you expect Todd, who is your brother, to advise you that you were wiring five hundred thousand plus to the wrong location if he knew about it?
MR. CROCKETT: Object to the form.
THE WITNESS: Yes.
(Whereupon, Defendant's Exhibit No. 11 was marked for identification.)
BY MS. STIBOLT:
Q Mr. Shapiro, I handed you a document I have marked as Wells Fargo Exhibit No. 11, is that a document you're familiar with?
A I don't recall seeing this previously.
Q It appears to be an Email from Mr. Messenger to your brother?

A Yes.
Q And the date of the Email?
A November 17, 2017.
Q And the time of the Email?
A 3:30 p.m.
Q And can you read what it states?
A "Todd: I just listened to your voice mail. Here are my escrow account instructions sent to you previously. Jim."
Q What is the subject of this Email?
A M&T Bank escrow account wire transfer instructions.
Q Looking at the attachment PS79, is that a document you have seen before?
A If it's the same as the prior wire transfer instructions in another exhibit, yes.
Q This is the same wire instructions received on November 16, 2017?
A Received on November 16, 2017, yes.
Q There are no spelling errors in the documents Bate labeled PS79?
A None that I see.
Q No capitalization errors?
A None that I see.
Q Did Todd forward this Email to you at the

time?
A He may have, I don't recall without checking Emails.
Q I would request that you check. Did Todd call you to advise you that there was a problem with the wire instructions?
A I don't recall.
Q What has Todd told you about his involvement in this transaction?
A What do you mean?
Q Have you discussed the fact that five hundred thousand dollars was wired to the wrong bank?
A Yes.
Q Have you asked him to explain the receipt of the wire instructions?
A We learned that his Email as well as Messenger's was hacked.
Q Todd's Email was hacked?
A Yes.
Q When did you learn that?
A We learned in December after learning that Messenger didn't receive the funds in accordance with his instructions.
Q How did you figure out that Todd's Email

had been hacked?

A Messenger provided Emails originating from Todd's Email address that acknowledged he didn't send.

Q Have we looked at any of those Emails today?

A Thus far, no -- Well, I shouldn't say, based on Emails that I saw previously, I don't think we looked at those Emails thus far. There is an Email on November 17th that we discussed earlier, Exhibit 11.

Q This is Exhibit 11, the one we're talking about?

A Yes, whether or not this was from Messenger or received by Todd, we don't know, I don't know.

Q I haven't received any of the Emails or information from Todd, so I don't have that information, it has not been produced to me.

MR. CROCKETT: Obviously, Todd and Messenger will shed more light on these issues.

MS. STIBOLT: They may, I also think some of these documents were responsive, we will address that at a later date.

MR. CROCKETT: For sure, if you have

them, you know, I am understanding that Todd never got this document, that's my assumption, I don't know, we will find out. Certainly if he forwarded it to you, you need to produce it referring to Exhibit 11.

MS. STIBOLT: It sounds like there are additional documents that were exchanged between Peter, Todd and Messenger post wire that have not been produced to Wells Fargo that Peter would have possession of. We talked about this before with regards to Peter's interrogatory number 3 answer. As I continue forward, it becomes obvious I have not received documents that are responsive to our request.

MR. CROCKETT: I am not sure what the request is. We made an effort to produce what led up to the wire transfer but I guess what she's saying, let's say a month later, you talked, what happened, there was an Email what happened and someone said, I was hacked, that's what she is asking for. I am not saying we will produce them, I don't know if they're responsive or not, but let's look for them and you and I will discuss them. We probably will produce them, but I don't even know, we haven't seen them before. Do you understand what

she is saying?

MS. STIBOLT: That's why I filed a motion to compel, we asked for it several times. If those documents exist, obviously, we would like to receive them before the hearing; otherwise, the hearing is going to be a waste of time.

MR. CROCKETT: Nothing would make me happier to moot a motion to compel hearing by saying we produced everything.

MS. STIBOLT: Perfect.

MR. CROCKETT: If we have a disagreement about it, that's what judges are for.

BY MS. STIBOLT:

Q You said you have come to understand that Todd Shapiro was also hacked in this transaction, is that correct?

A Yes.

Q Your complaint in this matter doesn't mention Todd being hacked, why is that?

MR. CROCKETT: Objection to the form.

THE WITNESS: I can't answer that.

BY MS. STIBOLT:

Q Did you know that Todd had been hacked in this transaction before the complaint was filed in this action?

A Possibly, yes.
(Whereupon, Defendant's exhibit No. 12 was marked for identification.)
BY MS. STIBOLT:
Q Sir, I handed you a document I marked as Exhibit 12, is that a document you're familiar with?
A I don't recall if I received this or not.
Q This is an Email purportedly from Todd Shapiro to Mr. Messenger, is that correct?
A That's what it appears, correct.
Q And the Email address toddshpr@yahoo.com is your brother's Email?
A Yes.
Q What is the date of this Email?
A November 17, 2017 3:32 p.m.
Q Can you read into the record what the Email states?
A "Yes, don't worry. It was a mistake but it has been resolved, we will send you corrected copy ASAP."
Q Do you know if that was a valid Email from Todd or a hacked Email?
A I don't know.
Q Have you asked Todd about this Email?
A Probably.

Q Do you recall what he said to you about it?
A No.
Q How did you get a copy of this Email?
A I don't know if I did receive a copy.
Q You produced it.
A If I did produce it, it must have been forwarded to me by Todd.
MR. CROCKETT: Again, it came from Messenger.
THE WITNESS: How did I receive it from Messenger, he must have sent it to me.
BY MS. STIBOLT:
Q Do you know when he sent it?
A No.
Q Did he send it to you prior to the wire transfer that's at issue in this case?
A No.
MR. CROCKETT: I can tell you without getting into work product, this was part of the due diligence for the complaint, there was some back and forth with Messenger and documents and you will see on our privilege log, that's the one item there and this is the documents that he sent us on that process, at that time, it's on the privilege log. I

can't recall what it was, it was around that time.

(Whereupon, Defendant's Exhibit No. 13 was marked for identification.)

BY MS. STIBOLT:

Q Sir, I handed you what I marked as Defendant's Exhibit No. 13, is that a document you're familiar with?

A I don't recall seeing this document.

Q So the bottom of a string purports to be an Email from shapirosmfp which is --

A Sam Farfaglia.

Q Sam Farfaglia's Email address to toddshpr?

A @yahoo.com.

Q @yahoo.com which is Todd's Email address?

A Correct.

Q Have you talked to Sam Farfaglia about the transaction that is at issue in this case?

A No.

Q Do you know if his Email was hacked?

A I don't know.

Q Have you asked him that question?

A Not that I recall, no.

Q And the top part of this Email purports to be an Email from your brother Todd, toddshpr@yahoo.com to Jim, correct?

A We don't know where it was -- We don't have the Email address of Jim Messenger so we don't know where it was sent.
Q Okay. The Email address for your brother is correct though?
A That is correct.
Q And what does the Email state?
A "Find attached copy. Because of time the funds will arrive Monday as shown in the value date. Thanks."
Q If you look at the attachment, is that a document you're familiar with?
A No.
Q Does Shapiro Real Estate Holdings have an account at Citibank that you're aware of?
A Not that I'm aware of.
Q I think you said, Shapiro Real Estate Holdings doesn't have any bank accounts?
A I don't think it does.
Q Did it have any bank accounts in November 2017?
A Not that I'm aware of, I will say it so the record is clear. Shapiro Real Estate Holdings didn't write checks or initiate any wire transfers from any account it might have, I don't even know if

it had an account in November 2017 or otherwise.

Q So PS82, in your opinion, is that a fraudulent document?

A This is not a notification, as best as I can recall, that was received by me as part of this transaction. Citibank did not issue a swift acknowledgment to me as part of a transaction.

Q Well, if Shapiro Real Estate Holdings doesn't have any bank accounts, how would it create a swift transfer document to the best of your knowledge?

MR. CROCKETT: Object to the form.

THE WITNESS: I don't know.

BY MS. STIBOLT:

Q Who else would have knowledge regarding the banking or financial matters of Shapiro Real Estate Holdings?

A No one. I will tell you as personal representative of the estate of Sidney Shapiro, I have not seen any account, bank account, brokerage account, securities account or received any statement from any institution whatsoever in the name of Shapiro Real Estate Holdings, LLC.

Q Okay. Have you talked to Citibank about the document that is Bate labeled PS82?

A Not that I recall, no.

MR. CROCKETT: We know line 59 is wrong.

MS. STIBOLT: I'm sorry.

MR. CROCKETT: Line 59 is wrong, this is obviously a phony document.

MS. STIBOLT: Why would that be wrong, that is the correct recipient.

MR. CROCKETT: If that's where it was sent, that is correct, but we wouldn't be here if that's where the money was sent.

MS. STIBOLT: I am confused because the witness is saying that Shapiro Real Estate Holdings doesn't have any account.

MR. CROCKETT: That's the second reason why this document is made up, do you know what I am saying?

THE WITNESS: I was perplexed when I saw this because it wasn't anything I saw as part of the transaction.

(Whereupon, Defendant's Exhibit No. 14 was marked for identification.)

BY MS. STIBOLT:

Q Mr. Shapiro, I handed you a document I marked as Exhibit 14, is that a document you

recognize?
A Yes.
Q Can you describe it, please?
A It says completed wire detail, it was issued by Citibank and if confirms the wire transfer that I initiated from my account.
Q So starting at the top, it says Shapiro Trst checking account, that's your Shapiro Law account?
A Yes.
Q In the amount if $504,611.13?
A Yes.
Q And the beneficiary is listed as James Messenger, correct?
A Yes.
Q In Syracuse, New York?
A Uh-huh.
Q Is that a yes?
A Yes.
Q And the beneficiary account number ends in 0445?
A Yes.
Q And the bank information is Wells Fargo located in Cedar Park, Texas?
A Correct.

Q Can you tell me why the Wells Fargo section has capitalization issues?
A I inputted this information so perhaps it was my poor typing, that's my best explanation.
Q All the information on the completed wire detail is information, Peter Shapiro, inserted?
A No.
Q Can you tell me which part you inserted and which part you did not?
A I inserted the amount, beneficiary, beneficiary account, the bank, the ABA number and the beneficiary account number.
Q And the federal reference number, that was inputted by Citibank?
A It was generated by whoever generates that item, it wasn't generated by me. The federal reference number, global reference number and Citibank reference number are not items I input.
Q And it says set up by Peter Shapiro, is that information you input or is that information populated by the bank?
A I think I input it.
Q Same question about approved by?
A Same, I believe I input it.
Q When you were completing this November 21,

2017 wire, you utilized the same system with Citibank where you input a code?

A Yes.

Q Does Citibank warn you to doublecheck the wire?

MR. CROCKETT: Objection to form.

THE WITNESS: I'm not sure, it may, I just can't recall what is presented to me before I initiate the wire.

BY MS. STIBOLT:

Q Does Citibank's website direct you to doublecheck the wire instructions?

A I don't know.

Q Does Citibank's website warn you that wire transfers are final?

A I don't know.

Q Does Citibank website warn you that wires are often irreversible?

A I don't know.

Q No one else was involved in creating Exhibit No. 14, correct?

MR. CROCKETT: Objection to form.

THE WITNESS: This was a document produced by Citibank from its system, I don't know who else was involved with populating or inputting

or generating other information that I had nothing to do with.
BY MS. STIBOLT:
Q But you were the individual who input the amount of the wire transfer, the beneficiary information, the beneficiary account information, the bank information, the ABA number?
A Yes.
Q No one else was involved in inputting that information?
A Correct.
Q Did you have communications with Mr. Messenger after the November 21, 2017 wire transfer?
A Yes.
Q When did you first communicate with Mr. Messenger after the November 21, 2017 wire transfer?
A Approximately, December 10th. It was at that time where he and my brother Todd called me to say he didn't receive the funds.
Q Mr. Messenger and Todd called you together?
A Yes.
Q You had a conference call?

A They called me together.
Q Had you sent an Email communication to Mr. Messenger confirming the wire transfer as you said it was your practice to do?
A I don't recall, I don't remember.
Q Can you look to see if you have that Email since earlier you testified that you normally followup within the hour when you send a wire transfer? So Mr. Messenger and Todd called you December 10th, what happened after that?
A Messenger indicated that he did not receive the funds.
Q Okay.
A He and Todd indicated that there were Emails between them that weren't issued or written by them so Messenger from November 21st or thereabouts until December something was receiving Emails from brother Todd's Email address with explanation that funds were coming or why there was a delay, be patient. So from my brother Todd's perspective, he presumed that on November 21st the funds were sent and hadn't heard anything to the contrary from Messenger until approximately December 10th, I believe it was a Thursday.
Q How did Todd, if you know, hear from

Mr. Messenger that the funds had not been received?
A I think Messenger called him and said, where the F is the money?
Q So have you received copies of the Emails that Todd was purportedly sending to Mr. Messenger telling him to be patient?
A I believe so, yes.
Q I have not received those, I would like to receive those.
MR. CROCKETT: I haven't seen them either.
BY MS. STIBOLT:
Q What happened after the phonecall of December 10th with Mr. Messenger and Todd, what happened on your end?
A I proceeded to call Citibank and discuss with them recalling the wire that had been sent, I called Wells Fargo, I believe the same day the wire fraud hotline described the transaction. The Wells representative indicated there was a mismatch between the beneficiary and the account holder, Citibank said they would take action which I think they filed or made a recall notice and it was back and forth between Citibank and Wells and ultimately what Wells said was the funds aren't there, we can't

do anything and I filed a complaint on December 11th with the FBI.

Q So between November 21, 2017 and December 10, 2017, you had no communications with Mr. Messenger?

A Correct.

Q How about Todd, did he have any communications with Mr. Messenger during that same time period?

A I don't think he did, if you just allow me to look at my calendar. No, December 10th was a Sunday, it might have been December 7th when I got the call from Messenger and Todd.

(Whereupon, Defendant's Exhibit No. 15 was marked for identification.)

BY MS. STIBOLT:

Q Sir, I handed you what I marked as Exhibit 15, is that a document you're familiar with?

A No.

Q Do you know where this document came from, it was produced by you in this action?

A Oh, it looks like interbank communications between Citibank and Wells relative to my recall notice, I am guessing. I am guessing just by the text, as I recall, I received the interbank

communications relative to the recall notice.
Q And this document is dated December 15, 2017, do you see that at the top?
A Yes.
Q When did you file the complaint with the FBI?
A Either the same day or the day following that I spoke with Messenger and Todd.
(Whereupon, Defendant's Exhibit No. 16 was marked for identification.)
BY MS. STIBOLT:
Q Sir, I handed you a document I marked as Exhibit 16, is that a document you recognize?
A Yes.
Q Can you describe it, please?
A It's the complaint I filed online with the FBI describing the wire transfer that's the subject of this action.
Q Did you ever meet with anybody from the FBI in person?
A No.
Q Did you ever speak to anyone at the FBI by telephone?
A I may have. I am sorry, before the telephone question, did I speak to anybody, was the

question did I speak to anybody at the FBI?
Q In person.
A Yes, there was a senior FBI person, first name is Ray, I know his wife is Doreen, Ray Andich, was a long time FBI employee locally who I believe was hired. So the answer is, yes, I spoke to him. It was he who suggested and referred me to the online complaint process.
Q Did you have a relationship with Ray Andich prior to this interaction?
A Only indirectly, socially, I knew of him, our sons were friendly.
Q This was someone you reached out to when you were trying to figure out what to do?
A Yes.
Q He directed you to the online complaint form?
A Yes.
Q You said you met with him in person?
A We spoke by phone.
Q Did you talk by phone with any other FBI representatives?
A No.
Q Did you meet in person with any other FBI representatives?

A No.

(Whereupon, Defendant's Exhibit No. 17 was marked for identification.)

BY MS. STIBOLT:

Q Sir, I handed you what I marked as Defendant's Exhibit 17, is that a document you're familiar with?

A Yes.

Q Can you describe it, please?

A It's a complaint referral form with the Internet Crime Complaint Center, that's part of the Federal Bureau of Investigations.

Q Was this an update to No. 16?

A Yes.

Q On the second page Bate label PS15, there is some additional information regarding Chris Achebe?

A Yes.

Q Do you see that under description of incident?

A Yes.

Q How did you obtain that information?

A From Citibank.

Q Do you know Mr. Achebe?

A No.

Q Have you ever had any interaction with Mr. Achebe that you know of?
A No.
Q On that same page where it says description of incident, it says this submission is an update to prior submission of an IC3 complaint on December 14, 2017, do you see that language?
A Yes.
Q No. 16 didn't have a date on it, do you recall when you filed the complaint that's reflected under Exhibit 16?
A If I can just look at the calendar. I think the complaint was filed around December 14, 2017.
(Whereupon, Defendant's Exhibit No. 18 was marked for identification.)
BY MS. STIBOLT:
Q I have handed you what I marked as Defendant's Exhibit 18, is that a document you're familiar with?
A Yes.
Q Can you describe it, please?
A Satisfaction of mortgage from James H. Messenger, Junior as Trustee of Rasselas Trust f/b/o A. Louis Santaro in favor of Shapiro Real Estate

Holdings, LLC.

Q What is the date of the release?

A It's dated December 28, 2017.

(Whereupon, Defendant's Exhibit No. 19 was marked for identification.)

BY MS. STIBOLT:

Q Sir, I handed you a document I marked as Defendant's Exhibit 19, is that a document you're familiar with?

A Yes, it appears to be interbank correspondence that I received from Citibank based on its communications with Wells Fargo relative to Wells investigation of the wire transfer at issue.

Q Did you read this as the recall request was denied?

A I read this as Wells Fargo being unable to comply with the request.

Q And the message indicates or states, in abbreviated fashion, please have remittor contact beneficiary directly with beneficiary shortened as BNF, do you see that language there?

A Well, it says what it says.

Q Did you ever try to contact Mr. Achebe?

A No.

(Whereupon, Defendant's Exhibit No. 20 was

marked for identification.)
BY MS. STIBOLT:
Q Sir, I have handed you what I marked as Exhibit No. 20, is that a document you're familiar with?
A Yes.
Q Can you describe it for me.
A It appears to be Emails at Citibank in response to my call requesting information on the transfer at issue and subsequent wires by Chris Achebe to Nigeria.
Q So Krishawna Smothers, is that a Citibank employee?
A I believe so, yes.
Q And this Email indicates that withdrawals from the Achebe account occurred between 11/24 and 11/27?
A That's what the text of the Email says.
Q And there is a chart below documenting some transactions?
A Without dates, correct.
Q It looks like part of it was cut off. According to this Email, at the time that Mr. Messenger and Todd contacted you on December 10th all the money from the wire had been

transferred out of Achebe's account?
A I am so sorry, yes, if the transfers by Achebe were made between November 24th and November 27th, that was prior to Todd and Messenger contacting me.
Q On December 10th, based on your recollection?
A Yes.
Q How did you get a copy of this Email from Smothers?
A I had been in touch with Citibank's wire fraud people and they were happy to provide it to me.
(Whereupon, Defendant's Exhibit No. 21 was marked for identification.)
BY MS. STIBOLT:
Q Sir, I handed you what I marked as Defendant's Exhibit No. 21, is that a document you're familiar with?
A I believe I have seen this before, wire transfer quick reference guide for customers.
Q For which bank?
A Wells Fargo.
Q This document was produced by you in this case, do you know how you obtained it?

A I probably found it through an online search of wire transfer Wells Fargo instructions.
Q And you obtained this post the November 21, 2017 wire transfer?
A I think that's correct.
Q Were you a Wells Fargo customer as of November 21, 2017?
MR. CROCKETT: Objection to the form.
THE WITNESS: What do you mean by customer?
BY MS. STIBOLT:
Q Did you hold any accounts at Wells Fargo?
A Yes.
Q What accounts did you hold there?
A I have a brokerage account.
Q Is that with Wells Fargo Bank or Wells Fargo Advisers?
A I am not sure, it's a brokerage account. Any other accounts, I think that's it.
Q You're not sure if that's a bank account or adviser's account?
A I'm not sure.
Q Is that an individual account or an account held by Shapiro PA?
A Individuals.

Q Have you ever signed account opening documents with Wells Fargo bank as an individual?
A No.
Q Has Shapiro Law ever signed account opening documents with Wells Fargo Bank?
A No.
Q Do you have a customer agreement with Wells Fargo Bank individually?
A I may, I don't know.
Q Would that be related to the brokerage account?
A Correct.
Q Does Shapiro Law have a customer agreement with Wells Fargo Bank?
A No.
MR. CROCKETT: Objection to the form.
BY MS. STIBOLT:
Q What do you know about Mr. Chris Achebe?
A Other than his name on an account at Wells, I know nothing.
Q Do you have any evidence that Mr. Achebe is on any kind of an OFAC list that he would be barred from banking in America?
A I don't know anything about him so.
MR. CROCKETT: If he's not, he should

be.

BY MS. STIBOLT:

Q You don't have any evidence that Mr. Achebe appears on an OFAC list?

A I do not.

Q What are your damages in this lawsuit?

A The monies of five hundred four thousand plus that were improperly accepted by Wells Fargo.

Q So when Mr. Messenger did not receive the wire transfer that you initiated on November 21, 2017, did you repay him at some point?

A Yes.

Q Do you remember when that repayment took place?

A Right around the time of the date of the satisfaction of mortgage that he signed December 26th.

MR. CROCKETT: As shown on Exhibit 22.

(Whereupon, Defendant's Exhibit No. 22 was marked for identification.)

BY MS. STIBOLT:

Q Sir, I handed you what I have marked as Exhibit No. 22, is that a document you're familiar with?

A Yes, it's a check from my attorney trust account in the amount of $504,611.13 payable to James H. Messenger, Jr. as Trustee of Rasselas Trust dated December 26, 2017.

Q Do you have any insurance at Shapiro Law that would cover the damages that took place in this wire transfer?

A No.

Q Did you make a claim under any insurance policy for the money that Shapiro Law lost?

A No.

Q Do you have E&O insurance at Shapiro Law?

A No.

Q Do you have malpractice insurance?

A Yes.

Q Who is your malpractice insurance with?

A It's a program through the Florida Bar.

Q Did you contact them regarding the loss in this case?

A No.

Q Why not?

MR. CROCKETT: Objection to form.

THE WITNESS: I didn't think it was necessary.

BY MS. STIBOLT:

Q Was a title insurance policy issued for the underlying real estate transaction?
A I don't know.
Q Did you make a claim under the title insurance policy for the 11/21/2017 wire?
A No.
Q Do you have any insurance for Shapiro Law that covers computer fraud?
A No.
Q Do you have any insurance for Shapiro Law that covers business Email compromise losses?
A No.
Q Did Shapiro Motors have any insurance policies at the time of this transaction?
A They would have whatever ordinary customary policies that a business would have and the specifics as to coverage, I cannot answer because I don't know.
Q Did you make a claim under Shapiro Motors insurance policy?
A No.
Q Did you discuss making a claim under Shapiro Motor policies with Todd?
A I might have.
Q Does Todd Shapiro have any insurance

policies that would cover this transaction?
A I don't know, I don't think so but I don't know.
Q Did you make any claims under Todd Shapiro's insurance?
A No.
Q How about Mr. Messenger, did you make a claim under Mr. Messenger's insurance policy?
A No.
Q Why not?
MR. CROCKETT: Objection to form.
THE WITNESS: We could, we haven't concluded nor I waived our right to do so.
BY MS. STIBOLT:
Q That is still an option for Shapiro Law?
A Potentially, yes.
Q Did Mr. Messenger have E&O insurance?
A I don't know.
Q Does he have an insurance policy that covers computer fraud?
A I don't know.
Q Do you know any details regarding his insurance policy?
A No.
Q Have you had any communications with

Mr. Messenger about his insurance coverage?
A No.
(Whereupon, Defendant's Exhibit No. 23 was marked for identification.)
BY MS. STIBOLT:
Q Mr. Shapiro, I handed you what I marked as Exhibit 23, is that a document you're familiar with?
A Yes.
Q Can you describe it?
A Plaintiff's Response to Defendant Wells Fargo Bank's First Set of Interrogatories.
Q Page 9, there is a verification document.
A Yes.
Q It's signed by Peter Shapiro, is that your signature?
A Yes, it is.
Q Page 5, interrogatory number 2, you reference December 14th as the date that you started reaching out to Wells Fargo and Citibank?
A Yes.
Q We were talking earlier, you indicated that the date that Mr. Messenger and Todd called you was December 10th?
A Which can't be the case because December 10th is a Sunday so Messenger and Todd must have

called me December 13th because I reached out and contacted Citibank and Wells on the 14th.

Q On page 6 of your interrogatory responses about two thirds of the way down, it indicates you spoke with James Messenger on December 14, 2017 and he informed you he never received the payoff funds, does that refresh your recollection, at all, regarding the date they contacted you?

A He called either the 13th or the 14th, says I spoke with them on the 14th. Yes, it refreshes my recollection.

Q December 14th is the date. After that it talks about how you and Mr. Messenger exchanged copies of numerous Emails and it became clear to us that Mr. Messenger's Email had been compromised, do you see that language there on page 6?

A Yes.

Q So I just want to get copies of these Emails we talked about.

A That shouldn't be a problem unless Mr. Crockett says otherwise.

MR. CROCKETT: You have them, bear in mind, Messenger may have more Emails than you have.

MS. STIBOLT: This says exchange copies between Messenger and Peter, that's why I

assume you had them so I would like to get copies of those documents.

BY MS. STIBOLT:

Q On page 4 of your interrogatory responses, interrogatory number 1 asked you to identify people that you believe have information regarding the claims in the complaint, you see that and you see your response? I didn't see Todd Shapiro listed in the interrogatory responses, would he have information?

MR. CROCKETT: That's really counsel's judgment.

MS. STIBOLT: I am going to ask Peter.

MR. CROCKETT: Obviously, you can answer the question.

THE WITNESS: What is the question?

BY MS. STIBOLT:

Q Based on the discussions today, it appears that Todd Shapiro would be someone that had information regarding the claims set forth in the complaint, would you agree?

MR. CROCKETT: Objection to form.

THE WITNESS: Not necessarily, Todd was very much in contact with Messenger, Todd is

aware that Messenger didn't receive the funds as originally wired and beyond that the claims in the complaint, I am not so certain -- I am unsure as to whether Todd has any additional information.

BY MS. STIBOLT:

Q Today I learned for the first time that Todd Shapiro had been hacked as well as Mr. Messenger, correct?

MR. CROCKETT: Objection to form.

MS. STIBOLT: That's the first time that information has been disclosed to Wells Fargo.

THE WITNESS: Okay.

BY MS. STIBOLT:

Q He seems like an intrical participant in the underlying transaction, would you agree?

MR. CROCKETT: Objection to the form.

THE WITNESS: That is something that me and Mr. Crockett need to discuss.

MR. CROCKETT: Can we have one minute, can I interrupt the deposition and ask you one other question? If you want me to just wait, I can hold off, I haven't heard on the motion to amend.

MS. STIBOLT: Haven't heard what?

MR. CROCKETT: Whether you objected.

MS. STIBOLT: I haven't gotten a response. I haven't gotten a response, I am assuming we will object.

MR. CROCKETT: I didn't want to delay filing.

MS. STIBOLT: What does that have to do with Todd?

MR. CROCKETT: What it has to do with if Todd is relevant if negligence is an issue as opposed to Count I the only issue is what Wells Fargo knew, nothing is relevant except the internal records in my understanding.

MS. STIBOLT: I think we're going to disagree about what is relevant.

MR. CROCKETT: That's fine. Go ahead, sorry to interrupt.

BY MS. STIBOLT:

Q Do you know why you have not previously disclosed to Wells Fargo in this action that Todd was also hacked?

MR. CROCKETT: Object to the form.

THE WITNESS: No.

MS. STIBOLT: That's all I have.

MR. CROCKETT: I don't have any questions. Read.

MS. STIBOLT: We will order.

MR. CROCKETT: I will take a copy.

(Whereupon, the deposition was concluded at 1:45 o'clock p.m.)

CERTIFICATE OF OATH

THE STATE OF FLORIDA)
COUNTY OF PALM BEACH)

I, the undersigned authority, certify that the aforementioned witness, Peter E. Shapiro, P.A., personally appeared before me and was duly sworn on Wednesday, September 12, 2018.

Dated this 24th day of September, 2018.

_______________________________
CHRISTINA ANDRIOFF, COURT REPORTER
Notary Public - State of Florida
My Commission Expires: 8/26/21
My Commission No.: GG 127836

C E R T I F I C A T E

THE STATE OF FLORIDA)

COUNTY OF PALM BEACH)

I, CHRISTINA ANDRIOFF, Court Reporter and Notary Public in and for the State of Florida at large, do hereby certify that I was authorized to and did report said deposition in stenotype; and that the foregoing pages are a true and correct transcription of my shorthand notes of said deposition.

I further certify that said deposition was taken at the time and place hereinabove set forth and that the taking of said deposition was commenced and completed as hereinabove set out.

I further certify that I am not attorney or counsel of any of the parties, nor am I a relative or employee of any attorney or counsel of any party connected with the action, nor am I financially interested in the action.

The foregoing certification of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or direction of the certifying reporter.

Dated this 24th day of September, 2018.

____________________________________
CHRISTINA ANDRIOFF, COURT REPORTER
Notary Public - State of Florida

DEPOSITION ERRATA SHEET

Our Assignment No. J2728626

Case Caption: SHAPIRO

vs. WELLS FARGO

DECLARATION UNDER PENALTY OF PERJURY

I, Peter E. Shapiro, P.A., declare under penalty of perjury that I have read the entire transcript of my Deposition taken in the captioned matter or the same has been read to me, and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath.

Signed on the _____ day of

________________, 20___.

________________________

Peter E. Shapiro, P.A.

DEPOSITION ERRATA SHEET

Page No._____Line No._____Change to:______________
__________________________________________________
Reason for change:________________________________
Page No._____Line No._____Change to:______________
__________________________________________________
Reason for change:________________________________
Page No._____Line No._____Change to:______________
__________________________________________________
Reason for change:________________________________
Page No._____Line No._____Change to:______________
__________________________________________________
Reason for change:________________________________
Page No._____Line No._____Change to:______________
__________________________________________________
Reason for change:________________________________
Page No._____Line No._____Change to:______________
__________________________________________________
Reason for change:________________________________
Page No._____Line No._____Change to:______________
__________________________________________________
Reason for change:________________________________

SIGNATURE:_______________________DATE:___________
Peter E. Shapiro, P.A.

DEPOSITION ERRATA SHEET

Page No._____Line No._____Change to:______________

__________________________________________________

Reason for change:________________________________

Page No._____Line No._____Change to:______________

__________________________________________________

Reason for change:________________________________

Page No._____Line No._____Change to:______________

__________________________________________________

Reason for change:________________________________

Page No._____Line No._____Change to:______________

__________________________________________________

Reason for change:________________________________

Page No._____Line No._____Change to:______________

__________________________________________________

Reason for change:________________________________

Page No._____Line No._____Change to:______________

__________________________________________________

Reason for change:________________________________

Page No._____Line No._____Change to:______________

__________________________________________________

Reason for change:________________________________

SIGNATURE:_______________________DATE:___________
Peter E. Shapiro, P.A.

**Exhibits**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT1**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT2**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT3**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT4**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT5**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT6**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT7**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT8**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT9**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT10**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT11**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT12**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT13**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT14**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT15**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT16**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT17**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT18**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT19**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT20**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT21**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT22**

**2728626 Peter.E. Shapiro, P.A. DEFENDANT. EXHIBIT23**

**$**

**$504,611.13** 57:2 76:11 93:2

**0**

**04** 19:19

**0445** 57:13 76:21

**1**

**1** 11:6,10,22 98:5

**10** 22:8 59:18,22 60:18 61:9 63:6 82:4

**10th** 79:19 80:10,24 81:14 82:11 88:25 89:6 96:23,25

**11** 64:18,21 67:11,12 68:5

**11/17** 52:13

**11/21/2017** 94:5

**11/24** 88:16

**11/27** 88:17

**11th** 82:1

**12** 70:2,6

**13** 14:9 72:3,6

**13202** 57:11

**1351** 12:20

**13th** 97:1,9

**14** 38:9,12 39:22 75:22,25 78:21

86:7,13 97:5

**14th**
39:7 96:18 97:2,9, 10,12

**15**
82:14,18 83:2

**15th**
39:15

**16**
43:22 44:13 45:4 46:19 48:5,8,17 49:2,6 65:18,19 83:9,13 85:13 86:9,11

**16th**
39:15 46:14,24 47:18,23 48:1,11, 25 49:9 50:13 54:1,21

**17**
50:1,13 53:12 54:15 65:3 70:15 85:2,6

**17th**
35:12 41:16 49:22 50:4 54:2,17, 20 56:10 59:1,7 62:4 63:21 64:6 67:10

**18**
86:15,19

**19**
87:4,8

**1983**
5:9 14:24

**1985**
14:24

**1986**
14:9

**1988**
5:13 6:7, 14

**1:45**
101:4

**2**

**2**
11:25 12:6,11 96:17

**20**
87:25 88:4

**2002**
6:4 14:20

**2003**
19:19 20:17

**2003/2004**
19:24

**2004**
9:3,14 20:17

**2010**
8:23 9:4

**2013**
7:10 8:23 12:22 20:14,15

**2017**
12:19 28:6 29:4,21 30:5 31:1 32:25 33:5 35:13 38:9,12 39:22 43:22 44:13 45:4 46:19 48:5,8,17 49:2,6 50:1,13 53:12 54:15 65:3,18, 19 70:15 73:21 74:1 78:1 79:13,17 82:3,4 83:3 86:7,14 87:3 90:4,7 92:11 93:4 97:5

**2018**
17:7 18:17

**21**
77:25 79:13,17 82:3 89:14,18 90:4,7 92:10

**21st**
35:13 41:17 80:16,21

**22**
92:19,21, 24

**23**
96:3,7

**2425**
4:21

**24th**
89:3

**26**
93:4

**26th**
92:17

**27th**
89:4

**28**
87:3

**29**
31:1

**3**

**3**
14:5 68:11

**3:13**
56:10

**3:15**
62:4

**3:28**
63:21

**3:30**
65:5

**3:32**
70:15

**4**

**4**
30:7,11 98:4

**440**
57:10

**4:49**
44:12

**5**

**5**
37:20 40:12 41:12 96:17

**59**
75:2,5

**6**

**6**
41:19,23 43:20 44:9 97:3,16

**615511**
12:12

**68**
38:6

**7**

**7**

43:21,25 44:4,11 46:12 47:8,13

**703**
57:10

**71**
38:9

**76**
56:14

**7th**
82:12

**8**

**8**
49:11,15 51:14

**88**
6:11

**89**
6:7,11,14

**9**

**9**
56:2,6 59:4 61:5,10, 14 96:12

**9:10**
49:23 50:1

**9:17**
50:4

**@**

**@yahoo.com**
72:13,14

**A**

**a.m.**
49:23 50:1,4

**ABA**
77:11 79:7

**abbreviated**
87:19

**accepted**
92:8

**access**
19:14 55:12

**accessing**
19:9

**accordance**
59:10 66:23

**account**
16:18,19 17:16,17, 24,25 18:6,7,18 19:6,15, 17,18,23 20:4,7, 10,11,17 32:5 42:12,17 43:23 45:8 47:15 50:9,12 51:4 56:13,17, 21,22 57:12,20 58:1 62:19 65:8,11 73:15,25 74:1,20, 21 75:14 76:6,8,9, 20 77:11, 12 79:6 81:21 88:16 89:1 90:15,18, 20,21,23, 24 91:1, 4,11,19 93:2

**accountant**
10:25

**accountant's**
58:23

**accounting**
5:11,20

**accounts**
16:14,16 17:20 19:9 21:6 32:4,9 50:14 51:20 55:12 73:18,20 74:9 90:12,14, 19

**accurate**
11:23 13:14

**accurately**
13:16,18

**Achebe**
85:17,24 86:2 87:23 88:11,16 89:3 91:18,21 92:4

**Achebe's**
89:1

**acknowledged**
43:17 67:3

**acknowledgment**
74:7

**action**
16:8 26:1 69:25 81:22 82:21 83:18 100:19

**actions**
15:24 16:2,5

**active**
6:15,17

**actual**
45:9

**addition**
50:17

**additional**
13:15 29:23 55:12 57:22 68:7 85:16 99:4

**address**
4:20,22, 25 12:14, 17,19,21, 25 13:2,6 40:16,17 42:9 45:10,13, 15,19,21, 23 46:2, 8,25 51:12 52:17 57:9 58:15,20 61:22 62:11,12, 14 67:3, 24 70:11 72:12,14 73:2,4 80:18

**addressed**
38:7

**addresses**
13:4,10 46:4 51:10

**administration**
5:10,17, 19

**admitted**
5:25 6:2, 5,6,7,9, 13,18 13:19,24

**adverse**
16:8

**advise**
64:4,12 66:5

**adviser's**
90:21

**Advisers**
90:17

**affiliated**
28:7

**affirmed**

4:9

**agree**
46:15
61:5,8
98:22
99:15

**agreement**
28:22
34:22
91:7,13

**ahead**
100:16

**alive**
24:12
30:22

**Ally**
32:5

**amend**
99:23

**America**
91:23

**American**
26:8

**amount**
10:14
18:8
57:1,4
76:11
77:10
79:5 93:2

**ancillary**
28:23

**Andich**
84:4,10

**Andrioff**
4:3

**annual**
17:5,21

**ant**
37:25

**antivirus**
22:2

**Apparently**
45:1

**appears**
30:22
45:22
46:12,16,
22 50:2,6
56:12
61:3
63:6,7,24
64:24
70:10
87:10
88:8 92:4
98:19

**appointed**
9:15

**approval**
56:24

**approved**
77:23

**approximately**
34:13
79:19
80:23

**April**
12:19

**arbitrator**
7:20 8:3,
20

**area**
8:18
26:11

**areas**
7:16,25
8:1,19
9:16
13:15,17

**Arnstein**
8:16,21,
24 9:1,7
10:1

**arrive**
73:9

**ASAP**
70:20

**ascertain**
50:11

**assist**
22:12

**assistant**
47:3

**assume**
5:7 38:24
98:1

**assuming**
100:3

**assumption**
68:2

**attached**
42:16
43:4
47:17,20
49:19
51:24
52:11
73:8

**attaches**
44:8

**attachment**
42:3,4
56:11
58:14
65:13
73:11

**attend**
35:7

**attended**
5:8

**attending**
35:14

**attorney**
13:20
26:20,25
32:23
33:10
34:21,23,
25 35:3,
6,17,22
36:13,15,
16 93:1

**attorney's**
35:1,5

**audit**
51:22
52:8

**August**
29:21

**authorization**
18:11
55:7

**authorized**
59:7

**average**
30:1

**aware**
25:9,10
28:2,3
32:10
39:24
40:14
54:6
73:15,16,
22 99:1

**B**

**bachelor's**
5:10,18

**back**
8:12
43:20
50:13
59:4
71:21
81:23

**background**
5:3

**balance**
34:16

**bank**
10:16,18
16:11
21:2
32:3,8
36:9
42:7,9,
12,19,20
43:23
48:10
51:22,24,
25 52:7,
9,17
53:1,14
54:1,3
55:19
57:15
58:12
63:17,18,
19 65:11
66:13
73:18,20
74:9,20
76:23
77:11,21
79:7
89:22
90:16,20
91:2,5,8,
14

**Bank's**
96:11

**banked**

32:6 42:7

**banker**
16:20 29:17

**banking**
74:16 91:23

**bankruptcy**
6:22 7:18 8:5,20 9:18

**banks**
10:12,15, 20

**bar**
5:25 6:9, 13,15 10:23 12:4,7,8, 11 13:1, 14 16:3,6 93:17

**Barclay**
26:24

**barred**
91:23

**bars**
6:5

**based**
44:11 46:12 53:15 54:16 61:3 62:10 67:8 87:11 89:6 98:19

**basis**
17:5,21

**Bate**
42:5 65:21 74:25 85:15

**Bate's**
56:7

**Bates**
37:24

**BCCD**
45:2

**bear**
97:22

**Beginning**
29:21

**behalf**
20:21 21:15

**Bends**
36:16

**beneficiary**
18:7 23:1 25:22 40:23 57:7,8 76:13,20 77:10,11, 12 79:5,6 81:21 87:20

**bio**
11:14,23

**bit**
5:2

**BNF**
87:21

**board**
10:13

**Boston**
5:8,16 14:25 27:10

**bottom**
61:6,9,12 72:9

**Bowen**
9:3,10,17

**branch**
16:22 20:24

**break**
15:7 27:1 61:16

**bridge**
29:23

**broker**
29:16

**brokerage**
74:20 90:15,18 91:10

**brother**
23:20,21 27:5,6 31:14,16 33:17 36:25 41:3 49:25 64:12,25 72:24 73:4 79:20 80:18,20

**brother's**
70:12

**Bureau**
85:12

**Burritt**
28:13,15 29:5,13 30:14 31:20,21 32:1,19, 22 34:19 35:4,16, 17 36:19 37:17 40:2 62:1

**Burritt's**
35:18,19 36:9,14, 16

**business**
5:10,17, 18 7:5, 18,20 13:5 21:18,20 27:22 28:1,5 29:9 41:7 94:11,16

**business-wise**
24:1

**businesses**
10:12

**buyer**
28:11

**buys**
10:18

## C

**calculator**
18:25

**calendar**
41:17 82:11 86:12

**call**
11:13 48:21 58:17 64:4 66:5 79:25 81:16 82:13 88:9

**called**
18:13 33:2 61:18 79:20,22 80:1,9 81:2,18 96:22 97:1,9

**calling**
61:17

**capitalization**
48:4 52:16 55:1 65:23 77:2

**car**
28:5,8

**cars**
31:24

**case**
22:22 23:17 55:16 71:17 72:17 89:25 93:19 96:24

**CCD**
40:21 45:2

**Cedar**
57:16 76:24

**Center** 85:11

**Central** 26:6

**certified** 8:7,8 10:25 15:1

**challenges** 29:10

**characterize** 29:8

**charge** 30:2

**chart** 88:19

**check** 66:4 93:1

**checking** 32:6 66:3 76:8

**checks** 73:24

**Chicago** 27:7

**choose** 54:19

**Chris** 85:16 88:10 91:18

**Christina** 4:3

**chronologically** 8:14

**Chrysler** 28:9

**Citibank** 16:12,14, 17,20 17:24 18:4,6, 10,20 19:5,14, 23 20:5, 8,17 21:6 49:9 53:14 54:11 56:13 57:19 59:9,14 73:15 74:6,24 76:5 77:14,18 78:2,4, 17,24 81:16,22, 24 82:23 85:23 87:11 88:8,12 96:19 97:2

**Citibank's** 78:11,14 89:11

**claim** 93:9 94:4,19, 22 95:8

**claims** 95:4 98:7,21 99:2

**clarity** 61:20

**clear** 73:23 97:14

**client** 17:8,12, 16 23:23 24:25 26:13 30:4 36:20 37:7

**clients** 10:10,21 30:2

**closing** 28:23 29:21 30:13 34:24 35:4,7, 10,18,21, 25 36:2, 4,6,16 37:3,15 38:16 41:12,14

**closings** 35:15

**code** 18:15,19, 25 19:4, 11 55:12, 13 78:2

**codes** 19:2

**colleague** 41:2,8

**college** 5:4,5,6 33:22

**commercial** 7:19,20

**communicate** 55:19,22, 24 79:16

**communication** 37:5 80:2

**communications** 37:14 79:12 82:4,8,22 83:1 87:12 95:25

**companies** 25:8

**company** 15:12 24:6 25:20 28:8 32:3

**compare** 53:25

**compel** 69:3,8

**complaint** 69:18,24 71:21 82:1 83:5,16 84:8,16 85:10,11 86:6,10, 13 98:7, 22 99:3

**completed** 76:4 77:5

**completing** 77:25

**comply** 87:17

**compromise** 21:18,21 94:11

**compromised** 97:15

**comptroller** 61:14,15, 17,18

**computer** 5:23 22:6,8,12 94:8 95:20

**concentration** 5:11,20

**concluded** 95:13 101:4

**conference** 79:25

**confirm** 48:18,21, 24 51:2 53:11,16

**confirmation** 18:14 22:25 23:3,4 56:13 58:5,12 59:5,6

**confirming** 22:23 80:3

**confirms** 76:5

**confused** 75:12

**Connecticut** 6:8,12

**considered** 29:16

**consummated** 29:14

**contact** 37:6 87:19,23 93:18 98:25

**contacted** 88:24 97:2,8

**contacting** 89:5

**content** 39:11

**continue** 68:12

**contract** 22:11

**contrary** 80:23

**controller/ accountant** 58:18

**conversations** 37:19 43:17

**copies** 40:5 81:4 97:14,18, 25 98:1

**copy** 38:13 39:21 60:19 70:20 71:4,5 73:8 89:9 101:2

**Corporate** 12:20

**correct** 12:15,24 14:10,13 15:20 20:15,19 21:1,13, 16 42:12 47:1,5 53:10 54:18 55:4 57:4,16 59:15 61:15 62:5,11 63:9,23 69:16 70:9,10 72:15,25 73:5,6 75:8,10 76:14,25 78:21 79:11 82:6 88:21 90:5 91:12 99:8

**corrected** 17:14 20:11 70:19

**correspondence** 87:11

**counsel** 10:14 47:3

**counsel's** 35:19 47:3 98:12

**Count** 100:10

**County** 26:3,7

**couple** 29:25

**court** 4:4 6:20, 22 13:7, 18

**courts** 6:18 8:6 13:19,21, 23,24

**cover** 93:6 95:1

**coverage** 94:17 96:1

**covers** 94:8,11 95:20

**CPA** 14:1,3, 21,23,25 15:4,16, 21,25

**create** 28:19 30:17 74:9

**created** 11:13,14, 15

**creating** 78:20

**creation** 20:18

**Creek** 4:21,24

**Crime** 85:11

**Crockett** 21:19 39:9 41:15 43:6,11, 15 44:20 45:1,5 50:22 51:6 55:3,20 60:10,21 62:6 63:2 64:7,15 67:20,25 68:15 69:7,11, 20 71:9, 19 74:12 75:2,5,9, 15 78:6, 22 81:10 90:8 91:16,25 92:18 93:22 95:11 97:21,22 98:11,15, 23 99:9, 16,18,19, 25 100:4, 8,15,21, 24 101:2

**Curacoley** 36:17

**current** 4:20 10:21 12:18 13:2,22 17:6,10, 22 29:22

**customary** 94:16

**customer** 90:6,10 91:7,13

**customers** 89:21

**cut** 88:22

**D**

**damages** 92:6 93:6

**Damon** 26:24

**date** 14:8 30:25 35:10 38:11 41:16 49:21 65:2 67:24 70:14 73:9 86:9 87:2 92:15 96:18,22 97:8,12

**dated** 38:9 83:2 87:3 93:4

**dates** 88:21

**day** 46:23 81:18 83:7

**days** 23:9

**DC** 6:7,10

**deal**
28:14
37:3
40:1,6
46:18
82:14
83:9
85:2,6
86:15,19
87:4,8,25
89:14,18
92:20
96:3

**dealership**
28:5

**death**
30:25

**December**
66:22
79:19
80:10,17,
23 81:14
82:1,4,
11,12
83:2
86:7,13
87:3
88:24
89:6
92:16
93:4
96:18,23,
24 97:1,
5,12

**Deer**
4:21,24

**Defendant**
96:10

**Defendant's**
11:10,25
14:5
30:7,11
37:20
41:19,23
43:25
49:11,15
56:2
59:18
64:17
70:2
72:2,6
75:21

**degree**
5:9,17

**delay**
80:20
100:4

**Dell**
22:8

**Deloitte**
15:14

**denied**
87:15

**depending**
30:4

**depo**
43:16

**deposition**
4:3 99:20
101:3

**describe**
11:22
13:13
44:6 76:3
83:15
85:9
86:22
88:7 96:9

**describing**
7:24 8:1
83:17

**description**
57:21
85:19
86:5

**destination**
57:1

**detail**
76:4 77:6

**details**
51:25
95:22

**device**
18:20
19:4,14,
20

**died**
15:7

**digits**
56:20

**diligence**
71:21

**direct**
4:11
37:4,14
78:11

**directed**
42:11
84:16

**directly**
37:9,12
87:20

**disagree**
100:14

**disagreemen
t**
69:12

**disciplinar
y**
15:24
16:2,5

**disclosed**
99:11
100:19

**discovery**
38:25
60:5

**discuss**
49:2,5,8
53:20
54:9
68:23
81:16
94:22
99:18

**discussed**
62:15
66:11
67:10

**discussing**
30:20

**discussions**
98:19

**distressed**
10:18
29:9

**distributed**
37:8,9

**District**
6:20,21,
22,23
13:21

**document**
11:6 12:9
14:1
30:10,12,
15,17,19
41:23
44:4 45:4
49:16
56:6
57:25
59:21,23
60:1,4,12
62:10
64:20,22
65:14
68:2
70:5,6
72:6,8
73:12
74:3,10,
25 75:6,
16,24,25
78:23
82:18,20
83:2,12,
13 85:6
86:19
87:7,8
88:4
89:18,24
92:24
96:7,12

**documenting**
88:19

**documents**
28:19,23
37:7,24
38:1
44:24
60:10,22
62:18,21
65:21
67:23
68:7,13
69:4
71:22,24
91:2,5
98:2

**Dodge**
28:9

**dollars**
66:12

**Doreen**
84:4

**doublecheck**
13:22
63:3
78:4,12

**doubt**
41:15

**dozen**
17:10,22

**driver's**
16:9

**due**
71:20

**duly**
4:9

**E**

**E&o**
93:12
95:17

**E-V-A-N**
4:18,19

**earlier**
13:16
63:10
67:10
80:7
96:21

**early**
12:22

**edits**
11:16

**education**
5:14

**educational**
5:3

**effect**
33:3

**effectuate**
55:13

**effectuated**
55:24

**effort**
68:16

**eighteen**
4:23

**electronically**
20:22

**Email**
12:25
13:2,4,10
21:18,20
22:14
23:4,5
38:5,11,
13,19
39:4,5,7,
21,22
40:5,16
41:25
42:13,23,
25 43:4,
21 44:5,
7,8,10,14
45:9,13,
15,19,21,
23 46:2,
4,7,8,25
47:2,7,
12,19,20
48:24
49:17,21,
24 50:3,
9,11,20,
21 51:2,
10,12,15
52:1,5,11
53:18
55:1
58:20
59:3
60:16
61:19,21
62:2,4,
10,11,14,
19,25
63:7,11,
15,20,23,
25 64:24
65:2,4,
10,25
66:17,19,
25 67:3,
10 68:19
70:8,11,
12,14,17,
21,22,24
71:4
72:10,12,
14,19,23,
24 73:2,
4,7 80:2,
6,18
88:15,18,
23 89:9
94:11
97:15

**Emails**
22:18
40:8 47:6
50:15,17
60:15
62:24
66:3
67:2,5,8,
9,17
80:15,18
81:4 88:8
97:14,19,
23

**employed**
6:25 8:21
9:2,11
31:14
61:25

**employee**
7:14
21:11
41:6 84:5
88:13

**employees**
7:11
22:11
31:2
59:16

**employment**
8:13
15:18
31:19

**employs**
7:2

**enclosed**
47:7
52:10

**encloses**
39:22

**encrypted**
22:18

**end**
55:11
81:15

**ends**
57:13
76:20

**engage**
7:16 9:23

**engaged**
28:1

**engagement**
25:2

**entity**
24:19
25:14,15
26:16
31:7
34:11

**error**
52:19,25

**errors**
47:22,24
48:4,7
52:13,17
55:1,2
65:20,23

**escapes**
27:1

35:22

**escrow**
42:12,13,
17 43:23
47:15
51:20
65:8,11

**establish**
33:25

**estate**
7:18 9:18
25:11,15,
17,22,24
26:1,10,
11,13,18
27:16,18,
21 32:7,8
36:15
38:8
57:22
73:14,17,
23 74:8,
17,19,23
75:13
86:25
94:2

**estimate**
29:2 31:4

**evaluating**
29:17

**Evan**
4:15,16,
17

**Eventually**
15:3

**evidence**
91:21
92:3

**evolved**
11:15

**exam**
15:2

**EXAMINATION** 4:11

**examined** 4:9

**exchange** 97:24

**exchanged** 68:7 97:13

**exchanging** 39:25

**excluding** 17:8

**execution** 37:8

**exhibit** 11:6,10, 22,25 12:6,11 14:5 30:7,11 37:20 40:12 41:12,19, 23 43:20, 21,25 44:4,9,11 46:12 47:8,13 49:11,15 51:14 56:2,6 59:4,18, 22 60:18 61:4,9, 10,14 63:6 64:17,21 65:16 67:11,12 68:5 70:2,6 72:2,6 75:21,25 78:21 82:14,18 83:9,13 85:2,6 86:11,15, 19 87:4, 8,25 88:4 89:14,18 92:19,20, 24 96:3,7

**exhibits** 43:16

**exist** 25:18,19 69:4

**existed** 20:12

**expect** 64:11

**expedited** 29:10

**experiencing** 29:9

**explain** 17:15 66:15

**explanation** 77:4 80:19

**expressed** 29:11

**F**

**f/b/o** 86:24

**fact** 53:21 54:9 66:11

**factor** 18:10 55:6,10

**fair** 10:13

**fairly** 31:25

**familiar** 11:7 12:3,8 14:2 30:15 33:18 37:25 41:24 45:23 46:8 56:6,20 58:16,21 59:23 64:22 70:6 72:7 73:12 82:18 85:7 86:20 87:9 88:4 89:19 92:24 96:7

**familiarity** 46:11

**Farfaglia** 61:20,24 62:2 72:11,16

**Farfaglia's** 72:12

**Fargo** 11:6 39:20 51:24 54:2 57:15 59:22 63:18 64:21 68:9 76:23 77:1 81:18 87:12,16 89:23 90:2,6, 12,16,17 91:2,5,8, 14 92:8 96:11,19 99:11 100:11,19

**fashion** 50:19 87:19

**father** 24:11 25:16

**favor** 86:25

**faxed** 39:12

**FBI** 82:2 83:6,17, 20,22 84:1,3,5, 21,24

**February** 7:10

**federal** 6:20 13:18,19 77:13,16 85:12

**fifteen** 63:8,22

**fifty** 10:4,6,9 30:3

**figure** 66:25 84:14

**file** 83:5

**filed** 69:2,24 81:23 82:1 83:16 86:10,13

**filing** 100:5

**final** 78:15

**financial** 10:17 29:9 32:5 74:16

**financing** 32:24

**find** 50:17 51:24 61:19 68:3 73:8

**fine** 100:15

**FINRA** 8:4

**firm** 7:3,4,9 8:10 10:1,3 12:14 20:12,18 26:24 34:6,7

**firm's** 11:9

**floor** 29:23

**Florida** 4:5 5:25 6:16,21, 23,24 12:4,7,8 13:1,14, 23 14:19, 21 16:3 93:17

**fob** 18:21

**follow** 61:4

**followup** 80:8

**foreclosure** 10:17

**Forever** 19:16

**form** 55:3,20 62:6 64:7,15 69:20 74:12 78:6,22 84:17 85:10 90:8 91:16 93:22 95:11 98:23 99:9,16 100:21

**Fort** 9:6,9

**forward** 38:22 39:1,3,4, 6 40:4 42:23,25 50:8,23 51:8 63:25 65:25 68:12

**forwarded** 37:1 38:21 39:7,14, 21 44:5, 7,10,21, 23,24 45:7 46:14,24 47:2,7 49:17,18 50:15,19, 20 56:9 58:11 59:6 60:7,19 61:9 62:2 68:3 71:8

**forwarding** 46:18 51:2 60:17

**forwards** 50:3 58:25

**found** 90:1

**franchises** 28:9

**fraud** 21:18,21 22:2 81:19 89:12 94:8 95:20

**fraudulent** 74:3

**Friday** 35:13 41:16,17 56:10

**friendly** 84:12

**front** 46:10,20

**full** 4:14

**funds** 22:25 34:3,6 51:23 66:23 73:9 79:21 80:12,19, 22 81:1, 25 97:6 99:1

**G**

**Gate** 10:17

**general** 8:17 31:9

**generally** 33:19

**generated** 18:19,25 19:2,5,11 77:15,16

**generates** 77:15

**generating** 79:1

**give** 10:7 52:1 61:19

**glad** 11:16

**global** 77:17

**Gmail** 45:8 49:18 50:12,14

**Gmail.com.** 13:9

**good** 4:13 11:16 13:22,24 15:22

**graduated** 5:7,8,16

**graduating** 5:9,13

**grandfather** 24:5

**Grove** 10:17

**guess** 68:17

**guessing** 82:24

**guesstimate** 17:9

**guestimate** 29:24

**guide** 89:21

**H**

**hacked** 66:18,19 67:1 68:20 69:15,19, 23 70:22 72:19 99:7 100:20

**handed** 11:5 12:6 13:25 30:10 37:23 41:22 44:3 49:14 56:5 59:21 64:20 70:5 72:5 75:24 82:17 83:12 85:5 86:18 87:7 88:3 89:17 92:23 96:6

**handle** 10:16,19

**happened** 68:19 80:10 81:13,15

**happier** 69:8

**happy** 89:12

**header** 60:17

**hear** 80:25

**heard** 21:18,22 25:11

52:7,9 80:22 99:22,24

**hearing** 69:5,6,8

**held** 16:9 24:21 34:14,17 90:24

**helps** 31:23

**high** 5:4,7

**hired** 84:6

**hold** 9:10 14:21 26:11 90:12,14 99:22

**holder** 81:21

**Holdings** 25:12,17 26:10,13 27:16,19 32:7,8 38:8 57:22 73:14,18, 23 74:8, 17,23 75:14 87:1

**home** 4:20

**homework** 43:15 60:9 63:2

**hosts** 11:18

**hotline** 81:19

**hour** 23:10 30:4 80:8

**hourly** 30:2

**hours** 23:9 29:19,25

**hundred** 29:25 30:3,6 64:13 66:12 92:7

**I**

**IC3** 86:6

**identical** 61:10,13

**identification** 11:11 12:1 14:6 30:8 37:21 41:20 44:1 49:12 56:3 59:19 64:18 70:3 72:3 75:22 82:15 83:10 85:3 86:16 87:5 88:1 89:15 92:21 96:4

**identified** 48:10

**identify** 30:11 38:3 49:15 98:5

**immediately** 56:24

**improperly** 92:8

**inactive** 11:1

**incident** 85:20 86:5

**include** 50:15

**includes** 13:15 49:18 57:1

**indirectly** 84:11

**individual** 32:12 79:4 90:23 91:2

**individually** 24:1 91:8

**Individuals** 10:12 90:25

**information** 5:12,21, 22 14:10 18:8,9 36:22,23 39:25 53:13,15 55:24 57:18,23 58:9 61:12 67:18,19 76:23 77:3,5,6, 20 79:1, 6,7,10 85:16,22 88:9 98:6,10, 21 99:4, 11

**informed** 97:6

**initially** 19:19

**initiate** 17:20 18:18 19:1 20:25 21:2,5 73:24 78:9

**initiated** 17:5 20:21 23:8,11 76:6 92:10

**initiating** 17:1,12 18:4 19:10 21:14 22:21,24

**input** 11:16,20, 21 18:7, 15,19 55:13 77:18,20, 22,24 78:2 79:4

**inputted** 19:11 57:18 77:3,14

**inputting** 78:25 79:9

**inserted** 57:23 77:6,8,10

**instance** 39:13

**institution** 74:22

**instructed** 59:9

**instruction** 53:14 56:12 58:4,11 59:5

**instructions** 18:5 22:23 23:13,16 36:25 37:2 42:1,5,6, 8,14,15, 16,18,19 43:3,24 44:8 46:13,18, 24 47:16, 18,23

48:5,8, 11,16,18, 19,22,25 49:3,6,8, 20 51:21 52:11,14, 20 53:12, 17,22,25 54:2,7, 10,11,15, 17,20,21, 24 55:8, 18,22 57:23 59:10,11, 14 64:5 65:8,12, 16,17 66:6,16, 24 78:12 90:2

**insurance** 93:5,9, 12,14,16 94:1,5,7, 10,13,20, 25 95:5, 8,17,19, 23 96:1

**interaction** 33:8 84:10 86:1

**Interactive** 11:17

**interbank** 17:17 82:22,25 87:10

**interest** 24:19,21 25:23 27:20,23 29:11 32:1 34:10

**internal** 100:11

**Internet** 21:25 85:11

**Interrogatories** 96:11

**interrogatory** 68:11 96:17 97:3 98:4,5,9

**interrupt** 99:20 100:16

**intimately** 29:12

**intrical** 99:14

**investigation** 87:13

**Investigations** 85:12

**investment** 29:16

**invoice** 25:5 28:24 29:15

**involved** 25:9 28:14 29:12,22 41:6 59:13 78:20,25 79:9

**involvement** 27:15 28:17 66:9

**IOLA** 42:17

**irreversible** 78:18

**Island** 34:22,25

**issue** 14:8 21:17 22:22 23:17 43:1 55:9,16 71:17 72:17 74:6 87:13 88:10 100:9,10

**issued** 14:8 76:5 80:15 94:1

**issues** 67:21 77:2

**item** 71:23 77:16

**items** 77:18

**J**

**James** 32:11,12 42:1 57:8 76:13 86:23 93:3 97:5

**Jeep** 28:10

**Jim** 39:11 41:25 49:24 56:8 59:2 62:4,25 63:7,13, 19 65:9 72:25 73:2

**jim@messengerlaw.net** 46:8 62:5

**Joanna** 27:5,8

**Jr** 93:3

**judges** 69:12

**judgment** 98:12

**jump** 48:2

**Junior** 57:8 86:24

**K**

**Kevin** 36:17

**key** 18:21

**kind** 10:7,10 18:14,15 22:4,6 91:22

**kinds** 28:1

**knew** 48:14,16 64:14 84:11 100:11

**knowledge** 74:11,15

**Krishawna** 88:12

**L**

**label** 85:15

**labeled** 65:21 74:25

**language** 86:7 87:21 97:16

**lapse** 14:12

**lapsed** 11:1 14:14

**Large** 4:5

**Lauderdale** 9:6,9

**law** 5:12 7:3, 6,7,11, 17,18,20

8:10,11, 18 9:16, 20,24 10:11 12:14,23 13:11 15:3,19 16:11,13, 16 17:2, 5,12 20:18 21:8,12, 15 22:1, 9,12,15, 19 23:12, 23 24:25 25:3 26:14 34:6,7 36:20 37:10,14 76:8 91:4,13 93:5,10, 12 94:7, 10 95:15

**Law's**
12:16 58:12

**lawsuit**
92:6

**lawyer**
6:19 9:24

**learn**
66:21

**learned**
66:17,22 99:6

**learning**
66:22

**lease**
28:22

**led**
68:16

**legal**
10:14 23:25 25:6 26:16 29:3 33:8

**legend**
38:22 39:1,3 61:5

**Lehr**
8:16,22, 24 9:1,8

**lender**
29:23,24 32:23 33:1,4 35:20 36:10,14, 23 40:18, 19

**lender's**
35:19 36:9

**lending**
41:1

**Leon**
24:2,4,6, 14,21,24 25:3,5 27:25 28:4,7, 11,14,24 29:4 30:13,20 31:2,6,10 32:2,17, 18,21,24 33:4 34:10 35:15 37:16 40:1 41:4

**letter**
25:2 38:7,9 40:17,22

**letterhead**
53:7,8

**license**
11:1 14:1,2,3, 12,21 15:16,17, 22,25 16:3,6,8, 9

**licensed**
15:16

**licenses**
6:15 10:23 11:3

**light**
62:12 63:10 67:21

**list**
13:18 91:22 92:4

**listed**
12:25 50:21 52:17 54:3 57:7,15 76:13 98:8

**listened**
65:7

**litigation**
9:23,25 10:3,6, 16,19

**litigator**
9:21

**live**
4:22

**lived**
4:24 14:16 33:20

**lives**
27:12

**living**
33:22

**LLC**
25:21 28:13 38:8 74:23 87:1

**loan**
37:6 40:24

**loans**
10:18

**locally**
84:5

**located**
27:6,9,11 33:13 34:22 40:15,20 42:20 48:12,14 53:4,6,8 76:24

**location**
9:5,7 53:1 64:13

**locations**
12:23

**log**
18:6 19:6 71:23,25

**long**
4:24 7:9 8:21 12:21 19:13 31:10 34:22,25 45:15,16, 17 46:1 84:5

**longstanding**
16:25

**looked**
60:16 67:5,9

**loss**
93:18

**losses**
94:11

**lost**
93:10

**Lou**
40:22,25

**Louis**
86:25

**M**

**M&t**
42:7,9, 12,20 43:23 46:13 51:21 54:1 63:19 65:11

**made**
51:24

68:16 75:16 81:23 89:3

**mail**
65:7

**maintained**
11:2 15:21 16:13 20:4,16

**make**
60:24 69:7 93:9 94:4,19 95:4,7

**making**
94:22

**malpractice**
93:14,16

**management**
5:11,21, 22,24

**manager**
31:9

**managing**
27:18,23

**Manlius**
27:12

**manually**
21:3

**Marcy**
36:15

**marked**
11:5,11 12:1,6 14:6 30:8,11 37:21 41:20,22 44:1,3 49:12,14 56:3,5 59:19,22 64:18,21 70:3,5 72:3,5 75:22,25 82:15,17 83:10,12 85:3,5 86:16,18 87:5,7 88:1,3 89:15,17 92:21,23 96:4,6

**matter**
69:18

**matters**
17:9 74:16

**means**
61:11

**mediator**
7:19 8:2, 5,7,8,19

**mediator/ arbitrator**
8:4

**meet**
83:19 84:24

**member**
12:8 13:13 25:21

**mention**
13:16 69:19

**message**
49:18 61:9 87:18

**Messenger**
32:11,13, 14 33:8, 13 34:3 36:4,24 37:5,8, 10,15 38:6 39:12,25 40:15,18 42:1,2,7, 11 43:22 46:14 47:8 48:14,21, 24 49:19, 22,24 51:16 53:4,17 54:7,16 56:8 57:8 58:25 60:11,12, 20,23 62:5 63:7,13, 14,16 64:25 66:23 67:2,15, 21 68:8 70:9 71:10,12, 22 73:2 76:14 79:13,17, 22 80:3, 9,11,16, 23 81:1, 2,5,14 82:5,8,13 83:8 86:24 88:24 89:4 92:9 93:3 95:7,17 96:1,22, 25 97:5, 13,23,25 98:25 99:1,8

**Messenger's**
32:20 34:7 42:12,17 47:11 59:2 66:18 95:8 97:15

**met**
84:19

**Michael**
27:5,6 36:14

**middle**
4:17 6:21

**mind**
97:23

**mine**
11:21

**minute**
99:20

**minutes**
63:8,22

**mismatch**
81:20

**missing**
52:4 54:25

**mistake**
70:18

**Monday**
73:9

**money**
75:11 81:3 88:25 93:10

**monies**
92:7

**Montejo**
47:4

**month**
68:18

**moot**
69:8

**morning**
4:13

**mortgage**
38:8,10 86:23 92:16

**motion**
69:3,8 99:22

**Motor**
24:2,6, 15,22,24 25:3,5 27:25 28:4,7, 15,24 29:4 30:14 32:18,24 94:23

**Motors**
28:13,15 29:5,13 30:14,20 31:2,7, 11,20,22 32:1,2, 19,21,22 33:5 34:10,19 35:4,16 36:19 37:16,17

40:1,2 41:4 58:18 62:1 94:13,19

**move** 14:18

**moved** 33:21

**N**

**named** 32:12

**Native** 26:8

**necessarily** 98:24

**necessitated** 29:10

**needed** 15:1 20:13

**negligence** 100:9

**negotiating** 29:17

**negotiations** 29:22

**Nigeria** 88:11

**non-equity** 8:25

**normal** 18:3 30:1

**Notary** 4:4

**notice** 47:22,24 48:4,7,10 52:4,13,16,19 53:1 81:23 82:24 83:1

**notification** 74:4

**November** 28:6 29:3 31:1 35:12,13 38:9,12 39:7,15,22 41:16 43:22 44:13 45:4 46:14,19,24 47:18,23 48:1,5,8,11,17,25 49:2,6,9,22 50:1,4,13 53:12 54:1,2,15,16,20,21 56:10 59:1,6 62:3 63:21 64:5 65:3,18,19 67:10 70:15 73:20 74:1 77:25 79:13,17 80:16,21 82:3 89:3 90:4,7 92:10

**number** 12:11 14:2,3,4 37:24 56:7,21 57:12 68:11 76:20 77:11,12,13,17,18 79:7 96:17 98:5

**numerous** 97:14

**O**

**O-N-O-N-D-A-G-A** 26:3

**object** 62:6 64:15 74:12 100:3,21

**objected** 99:25

**objecting** 60:21

**objection** 55:3,20 60:24 64:7 69:20 78:6,22 90:8 91:16 93:22 95:11 98:23 99:9,16

**obtain** 36:22 85:22

**obtained** 15:17 60:3 89:25 90:3

**obvious** 68:12

**Occasionally** 33:23

**occurred** 88:16

**OFAC** 91:22 92:4

**offer** 29:13

**office** 35:19 44:21

**offices** 35:21

**Older** 23:21

**online** 83:16 84:8,16 90:1

**Onondaga** 26:3,6

**open** 25:24

**opened** 19:17,19,24 20:1,14

**opening** 8:9 91:1,5

**operating** 16:18 17:17,25

**opinion** 74:2

**opposed** 100:10

**option** 95:15

**order** 55:13 101:1

**ordinary** 94:15

**oriented** 5:23

**originally** 99:2

**originating** 67:2

**Oswego** 27:12 33:21 35:6,19,22 36:15

**Outlook** 43:16

**owned** 25:16 34:16

**ownership** 27:20 31:25 34:11,12,14

**owns**

25:15

**P**

**P.A.**
4:8

**p.m.**
44:12
62:4
63:21
65:5
70:15
101:4

**PA**
7:5 20:3, 9,14,16, 21 51:4, 11 90:24

**packet**
58:25

**panel**
8:5

**paralegal**
35:18
36:17

**parents**
33:21

**Park**
57:16
76:24

**Parkway**
12:20

**part**
27:20
28:19
32:15
34:21
37:6
47:5,8
58:14
61:4
71:20
72:23
74:5,7
75:19
77:8,9
85:11
88:22

**participant**
99:14

**partner**
8:16,25
9:12,13, 15

**parts**
40:1

**passed**
15:2
25:22

**password**
18:6

**Pathmark**
35:20
36:10

**patient**
80:20
81:6

**pause**
52:1

**payable**
93:2

**payoff**
36:23
38:8
40:17,22
42:14
47:16
51:21
97:6

**pen**
15:7

**pending**
26:1 58:6

**people**
16:23
89:12
98:5

**percent**
10:5,6,9
34:13

**percentage**
10:2

**Perfect**
69:10

**period**
60:25
82:9

**perplexed**
75:18

**person**
16:24
20:25
21:14
40:21
83:20
84:2,3, 19,24

**personal**
26:17
27:21
41:5
74:18

**perspective**
80:21

**peter**
4:8,15,16
7:5 20:2, 9,16 43:8
44:25
46:24
68:8,9
77:6,19
96:14
97:25
98:14

**Peter's**
68:11

**peter. shapiro29**
13:8
50:20

**peter. shapiro29@ gmail**
51:3,11

**peter. shapiro29@ gmail.com**
44:18
45:12
50:5,8

**peter. shapiro29@ gmail.com.**
13:7

**petershapir o**
50:21,25
51:3

**petershapir o29@gmail. com**
46:23

**phone**
84:20,21

**phonecall**
81:13

**phony**
75:6

**place**
35:18
92:14
93:6

**Plaintiff's**
96:10

**plan**
29:23

**point**
14:16
38:14
40:12
47:2
56:15
92:11

**policies**
21:8
94:14,16, 23 95:1

**policy**
23:12
93:10
94:1,5,20
95:8,19, 23

**poor**
77:4

**populated**
77:21

**populating**
78:25

**portfolios**
10:18

**possession**
60:16
68:10

**possibly**
45:9 70:1

**post**
68:8 90:3

**Potentially**
95:16

**practice**
7:16,25
8:2 9:24
10:2
13:11,15, 17 40:4

80:4

**practiced** 9:20

**practicing** 8:17 9:16

**predating** 20:17

**prepared** 37:7

**present** 27:16,19 31:18

**presented** 78:8

**president** 7:8 31:8, 9

**presumed** 80:21

**previously** 12:18,19 64:23 65:9 67:8 100:18

**priceless** 29:6,7,15

**principal** 7:8 24:2 37:13 40:23

**print** 50:23 51:7

**printed** 11:19 12:7 39:12 47:4 50:23 61:12

**Printing** 51:6

**printout** 11:8

**prior** 8:9 9:1 21:17 22:21 32:3 33:7 37:3,8,15 38:16 41:12,13 42:25 54:11 55:23 65:15 71:16 84:10 86:6 89:4

**privilege** 71:23,25

**problem** 43:11 64:5 66:5 97:20

**procedure** 18:3 21:5

**procedures** 21:9

**proceeded** 81:16

**process** 22:23 23:2 29:11 58:1 59:9 71:25 84:8

**processed** 18:13

**processing** 19:12 55:11

**produce** 68:4,16, 21,24 71:7

**produced** 45:6 60:5,23 62:21 67:19 68:9 69:9 71:6 78:24 82:21 89:24

**product** 71:20

**production** 39:20 44:22,24

**professional** 10:22

**profile** 12:8 13:13

**profit** 10:13

**program** 93:17

**programs** 22:3,16

**protected** 18:7

**provide** 10:13 23:25 24:3 42:9,16 61:19 89:12

**provided** 11:20 18:20 19:14,21 32:23 36:25 37:7 38:24 40:24 56:14 62:18 67:2

**PS** 38:6

**PS15** 85:15

**PS68** 37:24

**PS69** 38:7

**PS70** 38:9

**PS71** 37:25

**PS73** 42:5

**PS74** 56:7

**PS75** 56:14,17 59:11

**PS79** 65:13,21

**PS82** 74:2,25

**pshapiro@shapirolawpa.com** 13:1

**public** 4:4 10:25

**purchase** 28:21 32:1 34:22

**purchasers** 29:12

**purportedly** 70:8 81:5

**purports** 49:24 63:16 72:9,23

**purposes** 13:7

**Q**

**quantify** 10:7

**question** 6:12 37:13 60:15 72:21 77:23 83:25 84:1 98:16,17 99:21

**questions** 100:25

**quick** 15:6 89:21

**Quontic** 10:16

**R**

**Ram** 28:9

**randomly** 18:25 19:4,11
**Rasselas** 33:2 86:24 93:3
**rate** 30:1,2,4
**Ray** 84:4,10
**reached** 84:13 97:1
**reaching** 96:19
**read** 47:7 51:15,18 63:15 65:6 70:16 87:14,16 100:25
**real** 7:18 9:18 25:11,15, 17 26:10, 11,13 27:16,18 32:7,8 38:7 57:22 73:14,17, 23 74:8, 16,23 75:13 86:25 94:2
**reason** 14:9 54:22 75:16
**recall** 9:12 14:4,14, 15 19:19, 25 20:6 21:1,2 23:18 34:25 35:1,2,4, 10,13,14 37:18 40:14 48:20,23 49:1 52:3,6 53:23 54:4,8 56:11 59:24 64:2,9,23 66:2,7 70:7 71:1 72:1,8,22 74:5 75:1 78:8 80:5 81:23 82:23,25 83:1 86:10 87:14
**recalling** 81:17
**receipt** 18:5 22:25 44:15 47:18 48:17 51:14 66:15
**receipts** 63:18
**receive** 19:5 29:15 38:13,16 39:1 44:10 51:23 52:8 66:23 69:5 71:5,11 79:21 80:12 81:9 92:9 99:1
**received** 15:17 17:15 23:15 38:19,23 40:5,9 41:13 43:8,17, 18 45:3,5 46:13 47:9,21 49:9 50:15,18 52:2 53:12,21 54:1,14 62:25 65:18,19 67:15,17 68:13 70:7 74:5,21 81:1,4,8 82:25 87:11 97:6
**receives** 23:13
**receiving** 39:19 40:11 41:11 54:3 80:17
**recent** 54:22
**recess** 7:21 15:9 36:12
**recipient** 75:8
**recognize** 44:4 45:19 62:11,12 76:1 83:13
**recollection** 40:11 41:11 46:17 89:7 97:7,11
**record** 4:14 38:3,18, 20 44:6 50:12,14 51:19 70:16 73:23
**records** 100:12
**reference** 77:13,17, 18 89:21 96:18
**referral** 85:10
**referred** 84:7
**referring** 68:4
**reflect** 13:19 42:7
**reflected** 86:10
**reflects** 13:17 14:1
**refresh** 97:7
**refreshes** 97:11
**regularly** 16:21
**related** 17:9,13 30:19 40:5 91:10
**relation** 23:5
**relationship** 16:25 41:5,6 84:9
**relative** 82:23 83:1 87:12
**release** 87:2
**relevant** 100:9,11, 14
**rely** 54:19
**remember** 6:3 80:5 92:13

**remittor** 87:19

**rendered** 26:15

**repay** 92:11

**repayment** 92:13

**Reporter** 4:4

**represent** 10:15

**representative** 26:17 27:21 36:8 74:19 81:20

**representatives** 84:22,25

**represented** 28:18 34:19,23 36:24

**representing** 26:20 35:3 40:19

**request** 22:25 23:2,3 39:20 58:5 66:4 68:14,16 87:14,17

**requesting** 88:9

**requests** 38:25

**required** 18:8 55:11

**requires** 18:19

**research** 29:20

**residence** 33:25

**resolved** 70:19

**responds** 63:7

**response** 38:24 39:19 63:12 88:9 96:10 98:8 100:2

**responses** 97:3 98:4,9

**responsible** 17:1 21:14

**responsive** 67:23 68:13,22

**rest** 34:17

**result** 51:22

**resulted** 29:13

**retainer** 17:15

**review** 34:21 40:8 43:3 47:17 48:2 52:10 60:18

**reviewed** 47:21 48:1 53:13

**Rich** 28:13,15 29:4,13 30:14 31:20,21 32:1,19, 21 34:19 35:3,16, 17,18,19 36:8,13, 16,19 37:16 40:2 62:1

**Road** 4:21

**Robinson** 36:16

**role** 32:20

**Ross** 14:24 15:5,14, 18

**routine** 52:23

**routing** 52:22

**S**

**sale** 28:20,21 29:8,10, 20 30:19 31:7 32:3,17, 18

**sales** 24:2,7, 15,22,24 25:3,5 27:25 28:4,7, 15,24 29:4 30:14 32:18,24

**Sam** 61:20,24 62:2 72:11,12, 16

**Santaro** 40:22,25 86:25

**satisfaction** 38:10 86:23 92:16

**Sawgrass** 12:20,21

**scam** 22:2

**scan** 51:7

**scanned** 39:12

**scheduling** 56:23

**school** 5:4,7,12 8:11 15:3,19

**science** 5:10,18

**search** 90:2

**secondary** 13:6

**secretary** 45:2

**section** 39:6 77:2

**securities** 74:21

**security** 21:25 22:14 55:12,13

**seller** 28:18

**selling** 31:24

**send** 18:9,15 23:5 39:4 44:14 49:24 67:4 70:19 71:16 80:8

**sending** 81:5

**sends** 62:4

**senior** 84:3

**serve** 7:19

**served** 10:13

**server**

22:9,10

**service**
10:10

**services**
23:25
24:3
26:16
29:14

**set**
37:23
53:13
54:15
55:18,23
59:11
62:25
77:19
96:11
98:21

**sets**
23:13,15
54:6,10

**setting**
23:16
55:8
59:13

**Shapiro**
4:8,13,15
5:3 7:5,
6,7,11,
17,23
8:10
10:11
11:5
12:3,16,
23 13:25
16:11,13,
16 17:2,
5,12
20:3,9,
14,16,21
21:8,12,
15 22:1,
9,12,14,
18 23:12,
19,23
24:2,4,6,
9,10,14,
22,24,25
25:3,5,8,
11,17
26:10,13,
14 27:11,
15,18,25
28:4,7,
11,15,24
29:4
30:10,14,
20,22
31:2,6,11
32:2,7,8,
17,18,21,
24 33:4
34:10,16
35:15
36:20
37:10,12,
14,16,23
38:6,7,21
40:1
41:4,25
44:3,25
46:25
56:18
57:22
58:12,18,
25 59:21
60:8 61:3
63:8
64:20
69:15
70:9
73:14,17,
23 74:8,
16,19,23
75:13,24
76:7,8
77:6,19
86:25
90:24
91:4,13
93:5,10,
12 94:7,
10,13,19,
23,25
95:15
96:6,14
98:8,20
99:7

**Shapiro's**
95:5

**shapirosmfp**
61:15
72:10

**shapirosmfp @gmail**
56:9

**shapirosmfp @gmail.com**
58:15
61:21

**shareholder**
24:8,14,
17

**shed**
67:21

**shortened**
87:20

**show**
38:23
39:6

**shown**
63:23
73:9
92:18

**shows**
43:7
60:19
63:18

**Shutts**
9:3,5,10,
17,25

**siblings**
27:3

**side**
59:15,17

**Sidney**
24:9,10,
12 25:16,
21,22
26:2
30:22
34:16,17
36:2
74:19

**Sidney's**
25:24
26:18
30:25

**signature**
96:15

**signed**
91:1,4
92:16
96:14

**sir**
41:22
47:14
56:5 70:5
72:5
82:17
83:12
85:5 87:7
88:3
89:17
92:23

**sister**
27:5,8

**sitting**
64:2

**situation**
62:15

**Sixteen**
5:1

**sixty**
10:5,6

**Smothers**
88:12
89:10

**socially**
84:11

**sold**
28:6

**sole**
25:21

**son**
4:23

**sons**
84:12

**sort**
33:22

**sounds**
26:8 68:6

**source**
56:17
58:1

**Southern**
6:20,22,
23

**speak**
53:18
62:8
83:22,25
84:1

**specific**
37:19

**specifically**
53:24
54:5

**specifics**
94:17

**spelled**
52:22

**spelling**
48:7
52:19,25
55:2
65:20

**spent**
29:20

**spoke**
83:8
84:6,20
97:5,10

**stake**
34:11,12

**stakes**
34:15

**stamp**
37:24

**stand**
17:14
20:11

**standing**
13:23,24
15:22

**Stanley**
36:14

**start**
17:7
37:24

**started**
9:14
20:12
96:18

**starting**
5:4 49:23
76:7

**starts**
61:6

**state**
4:5,14
6:5,6
73:7

**statement**
30:13
57:21
74:22

**states**
57:17
65:6
70:17
87:18

**status**
58:1

**Ste**
57:10

**steps**
48:18
53:11,16

**STIBOLT**
4:12 7:22
11:12
12:2 14:7
15:6,11
21:20,24
30:9
36:18
37:22
39:18
41:21
43:9,13,
19 44:2,
23 45:3,
11 49:13
51:1,9
55:5,21
56:4
59:20
60:14
61:2 62:9
63:5
64:10,19
67:22
68:6
69:2,10,
13,22
70:4
71:13
72:4
74:14
75:4,7,
12,23
78:10
79:3
81:12
82:16
83:11
85:4
86:17
87:6 88:2
89:16
90:11
91:17
92:2,22
93:25
95:14
96:5
97:24
98:3,13,
18 99:5,
10,13,24
100:1,6,
13,17,23
101:1

**stick**
18:23,24

**Street**
57:10

**string**
39:5
49:21
62:10
72:9

**subject**
43:21
65:10
83:17

**submission**
86:5,6

**subsequent**
15:18
88:10

**subsequently**
62:13

**substance**
39:16
47:11
51:15,18
54:25
63:15

**suggested**
84:7

**Sunday**
82:12
96:25

**Sunrise**
12:20

**swift**
74:6,10

**Switzer**
36:17

**sworn**
4:9

**Syracuse**
5:13 26:6
33:11,14,
18,21
34:1
40:15
42:10,21
53:9
57:10
76:16

**system**
22:3,4,12
55:11
57:19
78:1,24

**systems**
5:12,21,
22

**systems/ technology**
5:24

**T**

**talk**
18:17
84:21

**talked**
10:23
36:7
50:18
55:7
68:10,18
72:16
74:24
97:19

**talking**
32:16
34:20
37:4
60:25
67:12
96:21

**talks**
97:13

**TAS**
61:6,7

**telephone**
21:4,5
83:23,25

**telling**
81:6

**ten**
19:21

**Terese**
36:17

**term**
21:23

**terms**

32:6

**testified**
4:10 80:7

**Texas**
53:2 57:16 76:24

**text**
11:21 82:25 88:18

**thereabouts**
80:17

**thing**
8:2 43:6

**thinking**
17:14

**thirds**
97:4

**thought**
41:8

**thousand**
64:13 66:12 92:7

**Thursday**
80:24

**time**
14:25 15:21 19:1 31:3 45:16,17 52:6,24 59:5 60:25 63:20 64:1 65:4 66:1 69:6 71:25 72:1 73:8 79:20 82:9 84:5 88:23 92:15 94:14 99:6,10

**times**
69:3

**tiny**
18:25

**title**
7:7 8:24 20:7 31:6,21, 23 94:1,4

**titled**
20:1

**titles**
9:10

**today**
51:21 67:6 98:19 99:6

**Todd**
23:19,23, 25 24:1,8 25:8 27:4,11, 25 31:10, 16 33:17 35:25 37:1,12 38:6,7,21 39:6,15, 21,24 41:3,25 42:11,20, 23 43:22 44:7,11, 12 46:1, 5,12 49:3,17, 25 50:3, 19 53:20 56:14 58:12,24 59:6 60:8,20 61:15 62:3,13, 16 63:1, 8,12,25 64:4,11 65:7,25 66:4,8 67:15,18, 20 68:1,8 69:15,19, 23 70:9, 22,24 71:8 72:24 79:20,22 80:9,14, 25 81:5, 14 82:7, 13 83:8 88:24 89:4 94:23,25 95:4 96:22,25 98:8,20, 24,25 99:4,7 100:7,9, 19

**Todd's**
24:6 27:15 31:6 34:10 40:4 45:19,21 62:11 66:19,25 67:3 72:14 80:18,20

**toddshpr**
72:12

**toddshpr@ yahoo**
56:8,9

**toddshpr@ yahoo.com**
45:20 46:1 49:19,25 62:3 63:11 70:11 72:25

**told**
33:15,16 34:9 66:8

**tomorrow's**
42:14 47:16

**top**
44:17 57:25 58:24 63:6 72:23 76:7 83:3

**total**
29:24

**touch**
89:11

**Touche**
14:24 15:4,14, 18

**Townsquare**
11:17

**transaction**
19:8 23:17 29:3,20 30:23 31:3 32:15,16, 21 33:7, 12 34:4, 7,20 35:8,11, 15 37:16 41:1,12 58:6 66:9 69:15,24 72:17 74:6,7 75:20 81:19 94:2,14 95:1 99:15

**transactional**
9:18 10:3,19

**transactions**
7:19,20 88:20

**transfer**
17:18 18:4,16, 18 19:1, 10 20:25 21:2,6,17 22:22,24 23:6 42:1,4, 14,15 43:23 44:8 47:15,17, 23 48:11 51:21,23 52:10,20 53:14 55:14,15, 23 59:7 62:16 65:11,16 68:17 71:17

74:10 76:5 79:5,14, 18 80:3,9 83:17 87:13 88:10 89:21 90:2,4 92:10 93:7

**transferred**
89:1

**transfers**
17:2,4, 11,20,24 18:13 20:20 21:9,15 22:21 52:8 73:24 78:15 89:2

**Trst**
56:18 76:8

**trucks**
28:10

**true**
7:13 55:15

**trust**
16:18 17:16,25 20:4,7, 10,11 33:2 40:23 56:22 86:24 93:1,3

**Trustee**
86:24

93:3

**Tuesday**
41:18

**turn**
37:1

**twenty**
31:4,12

**twenty-eight**
34:13

**twenty-five**
30:6 31:5,13

**type**
19:8 21:25 22:14 25:20 28:8

**typically**
23:7,10

**typing**
77:4

**U**

**Uh-huh**
56:19 58:8 76:17

**ultimately**
81:24

**unable**
87:16

**uncertainty**
63:11

**underlying**
94:2 99:15

**understand**
15:15 68:25 69:14

**understanding**
25:14 68:1 100:12

**undertake**
23:3

**undertaking**
17:23

**University**
5:9,13,17

**unsigned**
38:10

**unsure**
99:3

**update**
85:13 86:6

**upstate**
35:20

**utilize**
18:10 19:22 22:1,15 55:6

**utilized**
21:5 78:1

**utilizing**
19:13

**V**

**valid**
70:21

**varies**
30:4

**verification**
96:12

**version**
39:10,16 43:7

**versions**
43:17

**versus**
10:3

**vetting**
29:12

**vice**
31:8

**Vivian**
47:3

**voice**
65:7

**W**

**wait**
99:21

**waived**
95:13

**warn**
78:4,14, 17

**Warren**
57:10

**waste**
69:6

**website**
11:9,18 12:4 13:1 78:11,14, 17

**weekends**
33:23

**Well's**
39:20

**Wells**
11:6 51:24 54:2 57:15 59:22 63:18 64:21 68:9 76:23 77:1 81:18,19, 24,25 82:23 87:12,13, 16 89:23 90:2,6, 12,16 91:2,5,8, 14,20 92:8 96:10,19 97:2 99:11 100:10,19

**Weston**
4:21 16:22

**whatsoever**
74:22

**wife**
4:23 84:4

**Windows**
22:7,8

**wire**
17:1,4, 11,18,19, 23,24 18:4,9,13 19:1,10 20:20,25 21:2,5,9,

14,17 22:21,22, 23,24 23:6,7, 13,16 42:1,4,6, 11,13,15, 20 43:1, 3,23 44:8 46:13,18 47:15,17, 23 48:5, 8,11 49:2,6,19 51:21,23 52:8,10, 14,20 53:12,14, 17,21,25 54:2,6, 10,12,15, 16,17,20, 21 55:8, 14,15,18, 22,23 56:12 57:5,19, 23 58:4, 11 59:4, 7,10,14 62:16 63:17 64:5 65:11,15, 17 66:6, 16 68:8, 17 71:16 73:24 76:4,5 77:5 78:1,5,9, 12,14 79:5,13, 17 80:3,8 81:17,18 83:17 87:13 88:25 89:11,20 90:2,4 92:10 93:7 94:5

**wired**
34:3,6 66:12 99:2

**wires**
18:11 78:17 88:10

**wiring**
64:12

**withdrawals**
88:15

**words**
52:4 54:25

**work**
9:19 10:17,19 15:1 16:21 25:6 28:25 29:3 41:4 51:6 71:20

**worked**
9:17 14:23,24 15:2,13, 16 31:10 41:9

**working**
15:4 31:20

**works**
27:12

**worry**
70:18

**write**
73:24

**written**
18:5 21:8 37:1 38:20 80:15

**wrong**
54:23 64:13 66:12 75:3,5,8

**wrote**
8:2

**Y**

**year**
4:23 6:2, 9,13 17:6,10, 22

**years**
5:1 9:23 15:1,2 19:21 21:3 31:12 45:17,18

**York**
6:6,16 11:1 13:21 14:2,16, 18 16:6 26:4,6,21 27:13 33:18 34:1 35:21 40:15 42:10,21 48:12,15 53:5,9 57:11 76:16

**younger**
23:21,22